ILND 44 (Rev. 09/20)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

**(c)** Attorneys *(firm name, address, and telephone number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Check one box, only.)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government not a party.)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

| CONTRACT | TORTS | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 530 General | ☐ 530 General | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| | 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 535 Death Penalty | | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | 320 Assault, Libel & Slander | | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 540 Mandamus & Other | ☐ 751 Family and Medical Leave Act | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | ☐ 450 Commerce |
| | 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 555 Prison Condition | ☐ 791 Employee Retirement Income Security Act | ☐ 460 Deportation |
| ☐ 151 Medicare Act | 350 Motor Vehicle | | 560 Detainee - | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans) | 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | Conditions of Confinement | | ☐ 480 Consumer Credit |
| | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | | **PROPERTY RIGHTS** | ☐ 485 Telephone Consumer |
| ☐ 153 Recovery of Veteran's Benefits | 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | | ☐ 820 Copyright | Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | | ☐ 385 Property Damage Product Liability | | ☐ 830 Patent | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 840 Trademark | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | 880 Defend Trade Secrets Act of 2016 (DTSA) | ☐ 891 Agricultural Arts |

| REAL PROPERTY | CIVIL RIGHTS | BANKRUPTCY | FORFEITURE/PENALTY | SOCIAL SECURITY | ☐ 893 Environmental Matters |
|---|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | 443 Housing/Accommodations | **IMMIGRATION** | | ☐ 864 SSID Title XVI | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/ Disabilities- Employment | ☐ 462 Naturalization Application | | ☐ 865 RSI (405(g)) | |
| 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition) | | **FEDERAL TAXES** | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | | ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Check one box, only.)*

☐ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District (specify)   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:
☐ Check if this is a **class action** under Rule 23, F.R.CV.P.

Demand $

CHECK Yes only if demanded in complaint:
Jury Demand: ☐ Yes   ☐ No

## IX. RELATED CASE(S) IF ANY *(See instructions):*
Judge                          Case Number

## X. Is this a previously dismissed or remanded case?   ☐ Yes   ☐ No   If yes, Case #          Name of Judge

Date: _____          Signature of Attorney of Record _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority for Civil Cover Sheet

The ILND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here. United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box. Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIANNA KONDILIS, BRANDEN LISCIANDRELLO, EDWARD GARCIA, JOSEPH MIRANDA, JULIE ORTEGA, MARCIN KAZARNOWICZ, MIKE BILINA, ROBERT HILLIARD, STEFANIE MINGARI, STEPHANIE FOX, VICTOR SOKOLOVSKI, MICHELLE MAXWELL, DANIELLE PHILP, TONI SHYTELL, and JULIE HATFIELD, )))))))))) | Case No.  1:23-cv-02249 |
| Plaintiffs, )) | JURY DEMANDED |
| v. )) | |
| CITY OF CHICAGO, ILLINOIS, )) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs, ADRIANNA KONDILIS, BRANDEN LISCIANDRELLO, EDWARD GARCIA, JOSEPH MIRANDA, JULIE ORTEGA, MARCIN KAZARNOWICZ, MIKE BILINA, ROBERT HILLIARD, STEFANIE MINGARI, STEPHANIE FOX, VICTOR SOKOLOVSKI, MICHELLE MAXWELL, DANIELLE PHILP, TONI SHYTELL, and JULIE HATFIELD (collectively "Plaintiffs"), by and through their undersigned counsel, DISPARTI LAW GROUP, P.A., state as follows against Defendant City of Chicago.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under Title VII of the Civil Rights Act of 1964 § 704, 42 U.S.C. 2000e-2; 42 U.S.C.A. § 2000e-3(a); and U.S. Const. amend. I through 42 U.S.C. § 1983.

2. Supplemental jurisdiction exists over the state law Illinois Human Rights Act ("IHRA") count pursuant to 28 U.S.C. § 1367 because the state law count is so related to the other claims in this action so as to form part of the same case or controversy.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant operates in this district, all of the events/omissions giving rise to the claims occurred in this district, and because the Defendant is subject to this Court's personal jurisdiction.

## **PARTIES**

4. Plaintiff Adrianna Kondilis is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

5. Plaintiff Marcin Kazarnowicz is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

6. Plaintiff Joseph Miranda is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

7. Plaintiff Stefanie Mingari is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

8. Plaintiff Branden Lisciandrello is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

9. Plaintiff Victor Sokolovski is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

10. Plaintiff Edward Garcia is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

11. Plaintiff Julie Ortega is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

12. Plaintiff Mike Bilina is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

13. Plaintiff Rob Hilliard is a legal adult and resident of the state of Illinois. He has been, at all times relevant, employed as a Chicago Police Officer.

14. Plaintiff Stephanie Fox is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

15. Plaintiff Michelle Maxwell is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

16. Plaintiff Danielle Philp is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

17. Plaintiff Toni Shytell is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

18. Plaintiff Julie Hatfield is a legal adult and resident of the state of Illinois. She has been, at all times relevant, employed as a Chicago Police Officer.

19. Defendant City of Chicago is a municipal corporation under the laws of the state of Illinois and is Plaintiffs' current employer.

## CONSENT TO PROCEED IN SAME SUIT

20. All plaintiffs are aware that they are being named as Plaintiffs in the same lawsuit and have consented to this action in writing.

## EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

21. On July 12, 2022, Plaintiff Kondilis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights (IDHR) (Charge No. 440-2022-03809) alleging, *inter alia*, that her employer's decision to put her in a no-pay status indefinitely until if and when she complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

22. On January 19, 2023, Plaintiff Kondilis was sent a Right to Sue letter from EEOC Investigator Eva Baran relating to her Charge No. 440-2022-03809. *See Group Exhibit 1.*

23. Plaintiff Kazarnowicz filed a charge of discrimination with the EEOC (Charge No. 440-2022-03911) alleging, *inter alia*, that his employer's decision to put him in a no-pay status indefinitely until if and when he complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

3

24. On January 19, 2023, Plaintiff Kazarnowicz was sent a Right to Sue letter from EEOC Investigator Eva Baran relating to his Charge No. 440-2022-03911. *See Group Exhibit 1.*

25. On August 12, 2022, Plaintiff Mingari filed a charge of discrimination with the EEOC (Charge No. 440-2022-04543) alleging, *inter alia*, that her employer's decision to put her in a no-pay status indefinitely until if and when she complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

26. Plaintiff Mingari was sent a Right to Sue letter from EEOC Investigator Chad Beatty relating to her Charge No. 440-2022-04543, but it expired December 8, 2022, while Plaintiff Mingari was searching for an attorney to help her. *See Group Exhibit 1.*

27. Numerous Plaintiffs inquired about EEOC proceedings regarding this religious discrimination by the City, but they were turned down by EEOC Investigators who alleged their claims had no merits at the EEOC.

28. Some Plaintiffs deliberately chose not to file anything at the EEOC regarding this religious discrimination by the City because they heard about the lack of success from their coworkers with the EEOC.

29. While Plaintiff Mingari's Right to Sue letter has expired, and multiple listed Plaintiffs do not have a proper Right to Sue letter, all of Plaintiffs' claims arise out of the same or similar discriminatory conduct by Defendant, and have all been committed within the same timeframe, *to wit*, since in or about October 2021 through the present, so too, the claims are similar because:

    a. All Plaintiffs were ordered to comply with the "City of Chicago's COVID-19 Vaccination Policy" by October 15, 2021, by entering whether or not they are vaccinated into the COVID-19 Vaccination Portal;

    b. All Plaintiffs did not enter their vaccination status into the COVID-19 Vaccination Portal by the October 15, 2021 deadline;

    c. All Plaintiffs filed religious exemption/accommodation requests to the City of Chicago in response to the "City of Chicago's COVID-19 Vaccination Policy;"

4

d. All Plaintiffs' religious exemption/accommodation requests are based on sincerely held religious beliefs;

e. Most Plaintiffs were sent the COVID-19 Vaccine Religious Exemption Follow Up Form to elaborate on the sincerity of their religious beliefs;

f. All Plaintiffs were required to have a religious leader's signature on their religious exemption/ accommodation request in order for it to get approved;

g. All Plaintiffs received a CR for noncompliance with the Portal requirements by the October 15, 2021 deadline;

h. All Plaintiffs were stripped of their police powers as a result of their noncompliance with the Portal requirements;

i. All Plaintiffs have spent numerous months in a non-disciplinary, no-pay status as a result of their noncompliance with the Portal requirements;

j. All Plaintiffs have spent numerous months waiting for their religious exemption/ accommodation request to the "City of Chicago's COVID-19 Vaccination Policy" to be approved; and

k. All Plaintiffs cannot return to work until they comply with the Portal requirements, despite the City's knowledge that these individuals are not vaccinated due to the religious exemption/accommodation requests that were granted.

30. Plaintiffs Kondilis, Kazarnowicz, and Mingari have given notice to the City of Chicago of impending suits and the City has had ample time to negotiate with the Plaintiffs and their attorney, and to utilize the conciliation services of the EEOC, but has not done so in any of Plaintiffs' cases.

31. Plaintiffs Kondilis, Kazarnowicz, and Mingari have timely filed EEOC Charges and received Right to Sue letters.

32. Here, all Plaintiffs may file together in the same suit as "single-filers" and as a matter of the "piggybacking doctrine" because all the Plaintiffs' claims arise out of the City of Chicago's

religious discrimination practice that began in Fall 2021. *See Horton v. Jackson Cty. Bd. of Cty. Cmm'rs*, 343 F.3d 897, 899 (7th Cir. 2003) ("The 'single-filing' exception (or 'piggybacking') doctrine is a judge-made exception to the rule that a timely administrative charge is a prerequisite to suit." (citing *Oatis v. Crown Zellerback Corp.*, 398 F.2d 496, 498-99 (5th Cir. 1968)).

33. Plaintiffs Kondilis, Kazarnowicz, and Mingari have satisfied the administrative prerequisites to bring this lawsuit via the single-filer exception/ piggybacking doctrine, especially since Plaintiffs' EEOC Charges have not generated any settlement, mediation, or resolution by Defendant, and the City had the opportunity to settle these claims through Plaintiffs' charges and did not do so.

## **FACTS COMMON TO ALL COUNTS**

34. At all times relevant, all Plaintiffs are employed by the City of Chicago as police officers.

35. In Fall 2021, the "City of Chicago COVID-19 Vaccination Policy" was sent out to City of Chicago employees requiring employees to be vaccinated and enter their vaccination status into the COVID-19 Vaccination Portal ("Portal") by October 15, 2021.

36. The "City of Chicago COVID-19 Vaccination Policy" allowed for (1) disability and medical accommodations and (2) religious accommodations.

37. The Religious Accommodations section (VI)(B) of the "City of Chicago COVID-19 Vaccination Policy" states:

   1. The City provides religious accommodations to employees with sincerely held religious beliefs unless such an accommodation would create an undue hardship. Requests for accommodations will be made on a case-by-case basis consistent with existing procedures for reasonable accommodation requests.
   2. Employees who believe they need an accommodation regarding this policy because of a sincerely held religious belief may request a reasonable accommodation through the Department of Human Resources. A form for requesting such an accommodation is attached to this policy as Exhibit B.

38. Plaintiffs who initially submitted conscientious exemptions, submitted these religious exemptions pursuant to the Illinois Health Care Right of Conscience Act, 465 ILCS 70.

39. At all times relevant, the City of Chicago has not treated each similarly situated officer equally because the "rules" or "orders" have not been applied the same way across the board to its employees: (*Chart 1*)

| Officer Name | Religious Exemption Request: | Ordered to comply with Portal: | # of chances to comply with Portal : | Given time to reconsider compliance with Portal? | Current work status: | Had to pass physical to return to work? | Stripped of Police Powers more than once? | Currently stripped of Police Powers? | Complied with bi-weekly testing requirements? | Informed they are up for termination | Time waiting for approval of religious exemption: | Non-disciplinary, no-pay status duration: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adrianna Kondilis | YES | 11/1/2021 | 1 | NO | Unable to return to work | N/A | YES | YES | N/A | NO | 10/14/2021-03/24/2022 | 11/02/2021 – present |
| Branden Lisciandrello | YES | 11/30/2021; 12/07/2021 | 2 | YES | 311 Call Center | YES | YES | YES | YES | YES | 12/03/2021-03/02/2022 | 12/07/2021 – 03/16/22 |
| Edward Garcia | YES | 11/16/2021 | 3 | NO | Police Officer | NO | NO | NO | SOMETIMES | NO | 10/14/2021-03/28/2022 | 11/16/2021 – 01/06/2022 |
| Joseph Miranda | YES | 12/8/2021; 12/02/2021 | 2 | YES | 311 Call Center | YES | YES | YES | SOMETIMES | YES | December 2021-March 2022 | 12/08/2021 – 04/08/2022 |
| Julie Ortega | YES | 11/10/2021 | 2 | YES | Police Officer, prior to leaving in October 2022 | NO | NO | NO | YES | NO | 10/14/2021-April 2022 | 11/10/2021 – 11/30/2021 |
| Marcin Kazarnowicz | YES | 11/1/2021 | 2 | NO | 311 Call Center | YES | YES | YES | YES | NO | 10/14/2021-05/02/2022 | 11/02/2021 – 5/10/2022 |
| Mike Bilina | YES | 11/16/2021 | 3 | NO | Police Officer | NO | NO | NO | RARELY | NO | 11/22/2021-04/11/2022 | 11/16/2021 – 12/09/2021 |
| Robert Hilliard | YES | 10/17/2021 | 1 | NO | 311 Call Center | YES | YES | YES | YES | NO | 03/21/2022-04/19/2022 | 10/17/2021 – 07/22/2022 |
| Stefanie Mingari | YES | 10/18/2021 | 3 | NO | Unable to return to work | N/A | NO | YES | N/A | NO | 10/14/2021-05/05/2022 | 10/19/2021 – present |
| Stephanie Fox | YES | 11/10/2021 | 3 | NO | Police Officer | N/A | NO | NO | SOMETIMES | NO | 10/12/2021-02/23/2022 | 11/10/2021 – 11/20/2021 |
| Victor Sokolovski | YES | 12/18/2021; 12/27/2021 | 2 | YES | Not employed by CPD, sent to 311 Call Center prior to leaving | YES | YES | N/A | N/A | NO | 01/20/2022-03/25/2022 | 12/17/2021 - 03/23/2022 |
| Michelle Maxwell | YES | 10/22/2021 | 3 | NO | 311 Call Center | YES | NO | YES | NO | NO | 02/25/2022-03/15/2022 | 10/22/2021 – 03/16/2022 |
| Danielle Philp | YES | 11/15/2021; 03/14/2022 | 2 | YES | 311 Call Center | NO | YES | NO | NO | NO | 03/05/2022-03/30/2022 | 03/14/2022-04/04/2022 |
| Toni Shytell | YES | 12/21/2021 | 1 | NO | Police Officer | NO | NO | NO | YES | NO | 02/24/2022-03/15/2022 | 12/21/2021-12/28/2021 |
| Julie Hatfield | YES | 11/17/2022 | 3 | NO | 311 Call Center | YES | YES | YES | YES | YES | 02/27/2022-04/06/2022 | 11/18/2021-03/14/2022 |

40. Officers who were in a non-disciplinary, no-pay status for a period of time more than thirty (30) days had their health insurance benefits revoked against their will.

41. Officers who remain stripped of their police powers have been prevented from taking promotional tests, which has hindered career advancement opportunities.

**Plaintiff Kondilis**

42. Plaintiff Kondilis began employment with the City of Chicago Police Department in October 2016, as a police officer.

43. Plaintiff Kondilis has a sincerely held religious belief in Eastern Orthodox Christianity, a religion that she has been practicing throughout her life.

44. On October 14, 2021, Plaintiff Kondilis submitted her request for a religious exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious belief in Eastern Orthodox Christianity.

45. Plaintiff Kondilis did not include a religious leader's signature at the bottom of this religious exemption/accommodation request form.

46. Plaintiff Kondilis did not enter her vaccination status into the Portal by October 15, 2021.

47. On November 1, 2021, Plaintiff Kondilis received a written direct order from Deputy Chief Ursitti #12589 to comply with written Department Policy by entering her current vaccination status into the Portal, but she respectfully refused.

48. Plaintiff Kondilis received a Complaint ("CR") for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

49. On November 1, 2021, Plaintiff Kondilis was stripped of her status as a police officer as a result of her non-compliance with the order to enter her vaccination status into the Portal.

50. On November 2, 2021, Plaintiff Kondilis was placed on a non-disciplinary, no-pay status as a result of her non-compliance with the Portal requirements.

51. Plaintiff Kondilis applied for unemployment benefits, but she was denied these benefits due to the "misconduct" surrounding her disobeying the order to enter her vaccination status into the Portal on November 1, 2021.

52. Plaintiff Kondilis' unemployment determination states:

"Was the claimant discharged for misconduct connect with the work? The evidence shows the claimant was discharged from CITY OF CHICAGO because declined to provide personal health information in the COVID PORTAL. Since the reason the claimant was discharged was within the claimant's control to avoid, the claimant was discharged for misconduct connected with the work. The claimant is ineligible for benefits from 10/31/2021 and will be determined ineligible until she meets the eligibility requirements."

53. Plaintiff Kondilis did not hear back from the Department of Human Resources for COVID exemptions regarding her religious exemption/accommodation request for months, despite her

efforts to continue the conversation and try to get answers on October 14, November 17, November 24, December 6, and December 8, 2021.

54. Finally, four months later, on February 10, 2022, the Department of Human Resources for COVID exemptions responded to Plaintiff Kondilis but questioned her genuineness and requested additional information regarding her religious exemption, including the signature of a religious leader.

55. The City of Chicago Department of Human Resources for COVID exemptions requested that Plaintiff Kondilis fill out the "COVID-19 Vaccine Religious Exemption Follow Up" form, which sought to verify that her purported religious beliefs were sincerely held.

56. On February 11, 2022, Reverend Darko Spasojevic's signed Plaintiff Kondils' religious exemption request/accommodation authenticating the seriousness of her sincerely held religious beliefs.

57. On February 24, 2022, Deputy Commissioner, Judith Marrs, signed Plaintiff Kondilis' exemption determination approving her religious accommodation, but this approval was not provided to Plaintiff Kondilis at the time.

58. On March 2, 2022, Manager of Police Personnel, Jermeka Jackson, signed Plaintiff Kondilis' exemption determination approving her religious accommodation, but this approval was not provided to Plaintiff Kondilis at the time.

59. On March 9, 2022, Plaintiff Kondilis was interviewed in relation to an investigation by the Chicago Police Department stemming from a Complaint made by Deputy Chief Ursitti #12589 for Plaintiff Kondilis' failure to enter her vaccination status into the Portal.

60. By March 24, 2022, Plaintiff Kondilis still had not heard back from the Department of Human Resources for COVID exemptions regarding her religious exemption request/accommodation, and it was not until Plaintiff Kondilis inquired again about the status of her request that she was sent an email by Jermeka Jackson attaching her approved religious exemption determination notice that same day, a month after it was first signed.

61. On March 28, 2022, Plaintiff Kondilis signed her approved vaccine exemption determination notice.

62. However, on March 30, 2022, Human Resources Liaison, Robert Landowski, informed Plaintiff Kondilis that she will not be able to return to work until she enters her vaccination status in the Portal, despite the Department's approval of her religious exemption request/accommodation from the COVID-19 vaccine.

63. The City of Chicago's Department of Human Resources for COVID exemptions approved Plaintiff Kondilis' religious exemption request/accommodation which enforces the idea that she is not vaccinated against COVID-19.

64. The City of Chicago's Department of Human Resources for COVID exemptions has knowledge of Plaintiff Kondilis' vaccination status based on the fact that it received and approved her vaccination exemption request/accommodation.

65. The City of Chicago's Department of Human Resources for COVID exemptions is aware of Plaintiff Kondilis' vaccination status since it granted her religious vaccine exemption, and the mandated use of a Portal to convey information already known is redundant, excessive, and the City's way of enforcing discrimination upon those who have sought religious accommodations from the vaccine.

66. Plaintiff Kondilis has concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

67. As a result of Plaintiff Kondilis' privacy and security concerns surrounding the mandated use of the Portal, she did not enter her vaccination status into the Portal despite being granted her religious exemption determination notice.

68. On July 12, 2022, Plaintiff Kondilis was stripped of her status as a police officer for the second time.

69. On July 12, 2022, Plaintiff filed a charge of discrimination with the EEOC and the Illinois Department of Human Rights (IDHR) (Charge No. 440-2022-03809) alleging, *inter alia*, that her employer's decision to put her in a no-pay status indefinitely until if and when she complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

70. By September 2, 2022, the City suspended it's COVID-19 testing requirements for employees.

71. On September 5, 2022, Plaintiff Kondilis emailed Human Resources Liaison, Robert Landowski, asking if she could come back to work now that the testing requirements were dropped, but he did not respond.

72. On September 7, 2022, Plaintiff Kondilis emailed Robert Landowski again, and he reiterated that she must comply with the Portal in order to come back to work despite her religious exemption/ accommodation request being granted and the suspension of COVID-19 testing requirements.

73. On January 19, 2023, Plaintiff Kondilis was sent a Right to Sue letter from EEOC Investigator Eva Baran relating to her Charge No. 440-2022-03809. *See Group Exhibit 1.*

74. To this day, Plaintiff Kondilis remains stripped from her police powers.

75. Plaintiff Kondilis remains in a non-disciplinary, no-pay status since November 2, 2021.

**Plaintiff Kazarnowicz**

76. Plaintiff Kazarnowicz began employment with the Chicago Police Department in 2005, with his most recent position being a police officer.

77. Plaintiff Kazarnowicz has a sincerely held religious belief in Christianity, a religion that he has been practicing throughout his life.

78. On October 14, 2021, Plaintiff Kazarnowicz submitted his request for a religious exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in Christianity.

79. Plaintiff Kazarnowicz did not include a religious leader's signature at the bottom of this religious exemption/accommodation request form.

11

80. Plaintiff Kazarnowicz did not enter his vaccination status into the Portal by October 15, 2021.

81. Plaintiff Kazarnowicz was awaiting proper exemption to input as his status into the Portal, and he had privacy concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

82. On November 1, 2021, Plaintiff Kazarnowicz was sent to headquarters for a counseling session to urge him to comply with the Portal, however, he refused to comply with the Portal.

83. Later on November 1, 2021, Plaintiff Kazarnowicz received a written direct order from Deputy Chief Ursitti #12589 to comply with written Department Policy by entering his current vaccination status into the Portal, but he respectfully refused.

84. Plaintiff Kazarnowicz received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

85. On November 1, 2021, Plaintiff Kazarnowicz was stripped of his status as a police officer as a result of his non-compliance with the order to enter his vaccination status into the Portal.

86. On or around November 2, 2021, Plaintiff Kazarnowicz was placed in a non-disciplinary, no-pay status for non-compliance with the Portal.

87. After 30 days in a non-disciplinary, no-pay status, Plaintiff Kazarnowicz lost access to his health insurance.

88. On December 11, 2021, the Department of Human Resources for COVID exemptions requested that Plaintiff Kazarnowicz provide a religious leader's signature on his exemption request under section III and that he complete the COVID-19 Vaccine Religious Exemption Follow Up Form, which sought to verify that his purported religious beliefs were sincerely held.

89. On or around December 14, 2021, Plaintiff Kazarnowicz submitted a letter to the Department of Human Resources for COVID exemptions indicating that he refused to sign the COVID-19 Vaccine Religious Exemption Follow Up Form, and he did not supplement his exemption request with a religious leader's signature.

90. On January 5, 2022, the Department of Human Resources for COVID exemptions notified Plaintiff Kazarnowicz that because the additional information it had requested was incomplete, his request for a religious exemption was denied.

91. On or around February 28, 2022, Mr. Kazarnowicz resubmitted his October 14, 2021 religious exemption request.

92. But on March 1, 2022, the Department of Human Resources for COVID exemptions re-notified Mr. Kazarnowicz that his request was inadequate without further information from the COVID-19 Vaccine Religious Exemption Follow Up Form and a religious leader's signature.

93. The Department of Human Resources for COVID exemptions further informed Plaintiff Kazarnowicz that he had six weeks from the date he first received denial of his exemption to be fully vaccinated, and that if he was not, he may be placed in a non-disciplinary, no-pay status.

94. On March 4, 2022, Plaintiff Kazarnowicz resubmitted his October 14, 2021 exemption request. This time he included a religious leader's signature to section III of the form authenticating the seriousness of his sincerely held religious beliefs. However, Plaintiff Kazarnowicz refused to sign the COVID-19 Vaccine Religious Exemption Follow Up Form.

95. On March 14, 2022, the Department of Human Resources for COVID exemptions notified Plaintiff Kazarnowicz that it had still not received a complete and sufficient response to the COVID-19 Vaccine Religious Exemption Follow Up Form.

96. On March 22, 2022, Plaintiff Kazarnowicz submitted a new religious exemption request, and this time he omitted any statements about conflicts with the use of aborted fetal cells in the vaccine. Again, Plaintiff Kazarnowicz refused to sign the COVID-19 Vaccine Religious Exemption Follow Up Form.

97. On March 23, 2022, the Department of Human Resources for COVID exemptions followed up with Plaintiff Kazarnowicz and asked him to explain his religious exemption request and detail why he took out the argument about aborted fetal cells.

13

98. The following day, Plaintiff Kazarnowicz submitted a letter explaining that he "did not mention said statement regarding fetal cells in order to move the process along."

99. On April 11, 2022, the Department of Human Resources for COVID exemptions denied Plaintiff Kazarnowicz's religious exemption request again, this time because it found that Plaintiff Kazarnowicz's explanation about removing the aborted fetal cell argument did not support his sincerely held religious beliefs.

100. On April 21, 2022, Plaintiff Kazarnowicz resubmitted his March 22, 2022 religious exemption request along with his signed COVID-19 Vaccine Religious Exemption Follow Up Form which he signed under duress.

101. The following day, April 22, 2022, the Department of Human Resources for COVID exemptions approved Plaintiff Kazarnowicz's religious exemption request/accommodation.

102. However it was not until May 2, 2022, that Plaintiff Kazarnowicz was informed that his religious exemption request/accommodation had finally been approved by the Department of Human Resources for COVID exemptions.

103. On May 10, 2022, Plaintiff Kazarnowicz submitted his vaccination status into the Portal; however, he felt pressured into signing it with threats of suspension, termination, and continued loss of pay.

104. Plaintiff Kazarnowicz had to pass the following tests in order to regain employment: urine test, blood test, hearing test, eye exam, breathing exam, run test combined with an EKG.

105. On May 10, 2022, Plaintiff Kazarnowicz regained his employment with the City of Chicago, but his police officer status was not reinstated.

106. On May 10, 2022, Plaintiff Kazarnowicz was no longer in a non-disciplinary, no-pay status.

107. On July 14, 2022, Plaintiff Kazarnowicz was stripped of his status as a police officer as a result of his non-compliance with the order to enter his vaccination status into the Portal for a second time.

108.     Plaintiff Kazarnowicz was placed at the 311 Call Center and given a desk job where he answers non-emergency calls and helps out with reports, and he has been doing this job since his reinstatement.

109.     Plaintiff Kazarnowicz filed a charge of discrimination with the EEOC (Charge No. 440-2022-03911) alleging, *inter alia*, that his employer's decision to put him in a no-pay status indefinitely until if and when he complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

110.     On January 19, 2023, Plaintiff Kazarnowicz was sent a Right to Sue letter from EEOC Investigator Eva Baran relating to his Charge No. 440-2022-03911. *See Group Exhibit 1.*

111.     To this day, Plaintiff Kazarnowicz remains stripped from his police powers.

112.     Plaintiff Kazarnowicz was in a non-disciplinary, no-pay status from November 2, 2021 through May 10, 2022, before returning to work at the 311 Call Center.

**Plaintiff Miranda**

113.     Plaintiff Miranda began employment with the City of Chicago Police Department on August 27, 2018, as a police officer.

114.     Plaintiff Miranda did not enter his vaccination status into the Portal by October 15, 2021.

115.     On December 8, 2021, Plaintiff Miranda was given a direct order to enter his vaccination status into the Portal, but he respectfully refused.

116.     On December 8, 2021, Plaintiff Miranda was placed in a non-disciplinary, no-pay status and was stripped of his police powers for non-compliance with the Portal requirements.

117.     In December 2021, Plaintiff Miranda submitted his request for a religious accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Roman Catholic faith.

118.     Plaintiff Miranda has a sincerely held religious belief in Roman Catholicism, a religion that he has been practicing throughout his life.

15

119.     Plaintiff Miranda did not include a religious leader's signature at the bottom of this religious exemption/accommodation request form.

120.     On December 20, 2021, Plaintiff Miranda was called to headquarters by Deputy Chief Snelling who ordered him to comply with the Portal requirements, but he respectfully refused for a second time.

121.     Plaintiff Miranda received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

122.     On December 28, 2021, the Department of Human Resources for COVID exemptions notified Plaintiff Miranda that because the additional information it had requested, including a religious leader's signature, was incomplete, his request for a religious exemption was denied.

123.     In February 2022, Plaintiff Miranda attempted to submit another religious exemption request/accommodation to the Department of Human Resources for COVID exemptions based upon the same sincerely held religious belief in Roman Catholicism, but this time he included a signature by religious leader Matthew Blair authenticating the seriousness of his sincerely held religious beliefs.

124.     On March 24, 2022, Deputy Commissioner, Judith Marrs, signed Plaintiff Miranda's exemption determination approving his religious accommodation.

125.     On March 25, 2022, Manager of Police Personnel, Jermeka Jackson, signed Plaintiff Miranda's exemption determination approving his religious accommodation.

126.     By the end of March 2022, Plaintiff Miranda's religious exemption request/accommodation was approved by the Department of Human Resources for COVID exemptions.

127.     At or around the end of March or beginning of April 2022, Plaintiff Miranda reached out to Union Vice President, Michael Mette, asking to go back to work.

128.     Around this same time, Union Vice President, Michael Mette, set up a meeting between the Department of Human Resources and Plaintiff Miranda for him to fill out reinstatement paperwork.

129.     Plaintiff Miranda did have to pass a medical, physical, drug test in order to return to work for the City of Chicago.

130.     In order to return to work, Plaintiff Miranda needed to comply with the Portal requirements which mandated that he put his vaccination status into the Portal. Additionally, he needed to submit COVID-19 test results twice weekly and upload his results to the Testing Portal.

131.     On April 8, 2022, Plaintiff Miranda complied with the Portal requirements and submitted that he was not vaccinated and had a religious accommodation.

132.     Plaintiff Miranda complied with the weekly testing submissions on the Testing Portal.

133.     On or around April 8, 2022, Plaintiff Miranda regained his employment with the City of Chicago, but his police officer status was not reinstated.

134.     On or around April 8, 2022, Plaintiff Miranda was no longer in non-disciplinary, no-pay status.

135.     Plaintiff Miranda was placed at the 311 Call Center and given a desk job where he answers non-emergency calls and helps out with reports, and he has been doing this job since his reinstatement.

136.     In July 2022, Plaintiff Miranda received notification from the FOP Union stating that he was being sent for termination by Superintendent Brown for insubordination for failure to comply with the "City of Chicago COVID-19 Vaccination Policy."

137.     Since the notification about his termination, Plaintiff Miranda has not heard anything from the City, from the Union, from anyone regarding the status of this.

138.     On August 24, 2022, Plaintiff Miranda was re-stripped a second time as a result of his non-compliance with the Portal requirements, and he remains stripped of his police powers to this day.

139.     Plaintiff Miranda was in a non-disciplinary, no-pay status from December 8, 2021 through April 8, 2022, before returning to work at the 311 Call Center.

**Plaintiff Mingari**

140.     Plaintiff Mingari began employment with the City of Chicago Police Department on April 28, 2008, as a police officer.

141.     Plaintiff Mingari has a sincerely held religious belief in Catholicism, a religion that she has been practicing throughout her life.

142.     On October 14, 2021, Plaintiff Mingari submitted her request for a religious exemption/accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious belief in Catholicism, which included a signature by religious leader Matthew Blair authenticating the seriousness of her sincerely held religious beliefs.

143.     Plaintiff Mingari included religious leader Matthew Blair's signature at the bottom of this religious exemption/accommodation request form, authenticating the seriousness of her sincerely held religious beliefs.

144.     Plaintiff Mingari did not enter her vaccination status into the Portal by October 15, 2021.

145.     On or around October 18, 2021, Plaintiff Mingari was called to headquarters by Deputy Chief Bulnes who ordered her to comply with the Portal requirements, but she respectfully refused.

146.     Later on October 18, 2021, Deputy Chief Talley gave Plaintiff Mingari another chance to comply with the Portal requirements, but she respectfully refused for the second time.

147.     At this time, Plaintiff Mingari's badge, star, and active officer ID were taken.

148.     Again on October 18, 2021, a third attempt was made by Deputy Chief Snelling #18940, ordering Plaintiff Mingari to comply with the Portal requirements, but for a third time, she respectfully refused.

149.     At this time, Plaintiff Mingari was stripped of her police powers and was told she could not come back to work until she complied with the Portal.

150.     On October 19, 2021, Plaintiff Mingari was placed in a non-disciplinary, no-pay status for noncompliance with the Portal.

151.    Plaintiff Mingari also received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

152.    On October 19, 2021, Plaintiff Mingari applied for unemployment benefits, but she was denied these benefits due to a "refusal to work."

153.    Plaintiff Mingari did not hear back from the Department of Human Resources for COVID exemptions regarding her religious exemption/accommodation request for months, despite her efforts to resend her religious exemption requests again on December 1, 2021; March 1, 2022; March 11, 2022; and March 23, 2022.

154.    On March 23, 2022, Plaintiff Mingari emailed Human Resources Liaison, Robert Landowski, and the Department of Human Resources for COVID exemptions for a status update, but she was never provided with any response.

155.    Finally, on April 6, 2022, about six months after submitting her exemption request, Plaintiff Mingari received an email from the Department of Health with the City of Chicago stating that "since she never responded to follow up questions about her exemption request, her exemption was denied."

156.    Plaintiff Mingari responded to the April 6, 2022, email and requested the date, time, name of the person who sent the email, and a copy of the email that was allegedly sent to her because she had not received any email requesting additional information.

157.    On May 5, 2022, Plaintiff Mingari received an email from Manager of Police Personnel, Jermeka Jackson, approving her religious exemption/accommodation, about seven months after she initially submitted it.

158.    Plaintiff Mingari was informed that she will not be able to return to work until she enters her vaccination status in the Portal.

159.    Plaintiff Mingari has concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

160.     Plaintiff Mingari emailed Human Resources Liaison, Robert Landowski, and asked why she had to input her private medical status into the Portal when the department was already aware of her status due to her religious exemption/accommodation being granted, and he did not reply.

161.     The City of Chicago Department of Human Resources for COVID exemptions is aware of Plaintiff Mingari's vaccination status since it granted her religious vaccine exemption, and the mandated use of a Portal to convey information already known is redundant, excessive, and the City's way of enforcing discrimination upon those who have sought religious accommodations from the vaccine.

162.     As a result of Plaintiff Mingari's privacy and security concerns surrounding the mandated use of the Portal, she did not enter her vaccination status into the Portal despite being granted her religious exemption determination notice.

163.     By September 2, 2022, the City suspended it's COVID-19 testing requirements for employees.

164.     Plaintiff Mingari emailed Human Resources Liaison, Robert Landowski, asking if she could come back to work now that the testing requirements were dropped, but he never replied.

165.     On August 12, 2022, Plaintiff Mingari filed a charge of discrimination with the EEOC (Charge No. 440-2022-04543) alleging, *inter alia*, that her employer's decision to put her in a no-pay status indefinitely until if and when she complies with the vaccination status Portal, constitutes religious discrimination within the meaning of Title VII. *See Group Exhibit 1.*

166.     Plaintiff Mingari was sent a Right to Sue letter from EEOC Investigator Chad Beatty relating to her Charge No. 440-2022-04543, but it expired December 8, 2022, while Plaintiff Mingari was searching for an attorney to help her. *See Group Exhibit 1.*

167.     To this day, Plaintiff Mingari remains stripped from her police powers.

168.     Plaintiff Mingari remains in a non-disciplinary, no-pay status since October 19, 2021.

**Plaintiff Lisciandrello**

169.     Plaintiff Lisciandrello began employment with the City of Chicago Police Department on

August 29, 2016, as a police officer.

170.     Plaintiff Lisciandrello took a leave of absence to join the City of Orlando, Florida Police

Department in February 2021.

171.     Plaintiff Lisciandrello returned to work with the City of Chicago Police Department in

August 2021.

172.     On October 14, 2021, Plaintiff Lisciandrello submitted his request for a conscientious

exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy."

173.     Plaintiff Lisciandrello did not enter his vaccination status into the Portal by October 15,

2021.

174.     By October 16, 2021, the Department of Human Resources for COVID exemptions had

denied Plaintiff Lisciandrello's conscientious exemption, stating it wanted him to use the

religious exemption form provided by the city.

175.     On November 30, 2021, Plaintiff Lisciandrello was called down to headquarters where he

was ordered to comply with the vaccine Portal by Commander Robert Cesario #22354, but

Plaintiff Lisciandrello respectfully refused.

176.     On November 30, 2021, Plaintiff Lisciandrello was stripped of his police powers for not

complying with the Portal, and his badge, shield, and active police ID was turned in.

177.     Plaintiff Lisciandrello has a sincerely held religious belief in Christianity, a religion that

he has been practicing throughout his life.

178.     On December 3, 2021, Plaintiff Lisciandrello submitted his religious exemption/

accommodation request to the Department of Human Resources for COVID exemptions based on

his sincerely held religious belief in Christianity.

179.     Plaintiff Lisciandrello did include religious leader Reverend Jose Velazquez's signature at the bottom of this religious exemption/accommodation request form, authenticating the seriousness of his sincerely held religious beliefs.

180.     On December 7, 2021, Plaintiff Lisciandrello was called down to headquarters again where he was ordered to comply with the vaccine Portal by Deputy Chief Larry Snelling #18940, but Plaintiff Lisciandrello respectfully refused.

181.     On December 7, 2021, and as a result of his refusal to comply with the Portal, Plaintiff Lisciandrello was placed in a non-disciplinary, no-pay status.

182.     On January 12, 2022, Plaintiff Lisciandrello was called down to headquarters yet again to give a sworn statement on why he did not comply with the Portal.

183.     After 30 days in a non-disciplinary, no-pay status, Plaintiff Lisciandrello lost access to his health insurance.

184.     On February 21, 2022, Plaintiff Lisciandrello was told to fill out the "COVID-19 Vaccine Religious Exemption Follow Up" form in order for his religious exemption to be approved.

185.     On March 2, 2022, Plaintiff Lisciandrello was granted approval of his religious exemption/accommodation request, but he was unaware of this fact since he no longer had access to his employee email address.

186.     In March 2022, Plaintiff Lisciandrello contacted Union Vice President, Michael Mette, asking if he could go back to work.

187.     Around this same time, Union Vice President, Michael Mette, set up a meeting between the Department of Human Resources and Plaintiff Lisciandrello to fill out reinstatement paperwork.

188.     Plaintiff Lisciandrello was informed that he will not be able to return to work until he enters his vaccination status in the Portal.

189.     On March 16, 2022, Plaintiff Lisciandrello entered his vaccination status into the Portal for the very first time, and he was told that unvaccinated employees must submit COVID-19 test results twice a week and submit their results in the Testing Portal.

190.     The Department of Human Resources for COVID exemptions required Plaintiff Lisciandrello to pass a drug test, medical exam, and physical exam prior to returning to the street and getting his credentials back.

191.     On March 16, 2022, Plaintiff Lisciandrello took his drug test at the Chicago Police Department, and he took his medical and physical exam shortly thereafter.

192.     Later this day, on March 16, 2022, Plaintiff Lisciandrello regained his employment with the City of Chicago, but his police officer status was not reinstated.

193.     On March 16, 2022, Plaintiff Lisciandrello was no longer in a non-disciplinary, no-pay status.

194.     Plaintiff Lisciandrello was placed at the 311 Call Center and given a desk job where he answers non-emergency calls and helps out with reports, until his medical testing cleared.

195.     On May 3, 2022, Plaintiff Lisciandrello was called down to headquarters to speak with Internal Affairs Sergeant Marino #2480 who informed him that there was a Complaint (CR) against him for insubordination for not complying with the Portal.

196.     On May 3, 2022, Plaintiff Lisciandrello was ordered to hand over his badge, shield, and active police ID, but he stated that he already turned these items over on November 30, 2021.

197.     On May 9, 2022, Plaintiff Lisciandrello received a voicemail from the doctor stating that the medical and physical results were completed and sent to the City of Chicago.

198.     To this day Plaintiff Lisciandrello remains at the 311 Call Center despite knowing that his results have come back.

199.     In May 2021, Plaintiff Lisciandrello received notification from the FOP Union stating that he was being sent for termination by Superintendent Brown for insubordination for failure to comply with the "City of Chicago COVID-19 Vaccination Policy."

23

200.     Since the notification about his termination, Plaintiff Lisciandrello has not heard anything

from the City, from the Union, from anyone regarding the status of this.

201.     To this day, Plaintiff Lisciandrello remains stripped from his police powers.

202.     Plaintiff Lisciandrello was in a non-disciplinary, no-pay status from December 7, 2021

through March 16, 2022, before returning to work at the 311 Call Center.

**Plaintiff Sokolovski**

203.     Plaintiff Sokolovski began employment with the City of Chicago Police Department in

December 2018, as a police officer.

204.     Plaintiff Sokolovski did not enter his vaccination status into the Portal by October 15,

2021.

205.     On December 17, 2021, Plaintiff Sokolovski was ordered to comply with the Portal

requirements by Deputy Chief Roderick, but he respectfully refused.

206.     On December 17, 2021, and as a result of his refusal to comply with the Portal, Plaintiff

Sokolovski was placed in a non-disciplinary, no-pay status.

207.     Plaintiff Sokolovski was ordered to hand over his star, badge, and active officer ID, and

he was given two weeks to reconsider his decision to comply with the Portal.

208.     On December 27, 2021, Plaintiff Sokolovski was called to headquarters by Deputy Chief

Shemash #99888 who ordered him to comply with the Portal requirements, but he respectfully

refused for the second time.

209.     On December 27, 2021, Plaintiff Sokolovski received a CR for noncompliance with the

"City of Chicago COVID-19 Vaccination Policy."

210.     In January 2022, after 30 days in a non-disciplinary, no-pay status, Plaintiff Sokolovski

lost access to his health insurance.

211.     On January 20, 2022, Plaintiff Sokolovski submitted his request for a religious

exemption/accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on

his sincerely held religious beliefs in Eastern Orthodox Christianity.

212.     Plaintiff Sokolovski did include religious leader Father Toni Josevski's signature at the bottom of this religious exemption/accommodation request form, authenticating the seriousness of his sincerely held religious beliefs. Father Toni Josevski also wrote a letter to the City of Chicago to support his claims.

213.     Plaintiff Sokolovski did not hear back from the Department of Human Resources for COVID exemptions regarding his religious exemption/accommodation request for months, despite his efforts to resend his religious exemption requests again on February 23, 2022; February 28, 2022; and March 23, 2022.

214.     After numerous submissions of his religious exemption/accommodation requests that received no response from the Department of Human Resources for COVID exemptions, Plaintiff Sokolovski decided to go against his religious beliefs and get vaccinated so he could return to work.

215.     On March 3, 2022, Plaintiff Sokolovski received his first dose of the COVID-19 vaccination, and he subsequently entered his vaccination status into the Portal that same day.

216.     Shortly thereafter, Plaintiff Sokolovski reached out to Union Vice President, Michael Mette, asking to go back to work now that he was vaccinated.

217.     Around this same time, Union Vice President, Michael Mette, set up a meeting between the Department of Human Resources and Plaintiff Sokolovski for him to fill out reinstatement paperwork.

218.     On March 14, 2022, Plaintiff Sokolovski went to headquarters to get reinstated, and he was told he needed to do a drug test, medical exam, and physical exam, but this was not required prior to his return.

219.     On March 14, 2022, Plaintiff Sokolovski regained his employment with the City of Chicago, but his police officer status was not reinstated.

220.     On March 14, 2022, Plaintiff Sokolovski was no longer in a non-disciplinary, no-pay status.

221.     Plaintiff Sokolovski was placed that the 311 Call Center and given a desk job where he answers non-emergency calls and helps out with reports, and he has been doing this job since his reinstatement.

222.     On March 23, 2022, Deputy Commissioner, Judith Marrs, signed Plaintiff Sokolovski's exemption determination approving his religious accommodation.

223.     On March 25, 2022, Manager of Police Personnel, Jermeka Jackson, signed Plaintiff Sokolovski's exemption determination approving his religious accommodation.

224.     On March 25, 2022, Plaintiff Sokolovski's religious exemption request/accommodation was approved by the Department of Human Resources for COVID exemptions.

225.     In April 2022, Plaintiff Sokolovski was stripped of his status as a police officer for the second time due to the CR he was given on December 27, 2021.

226.     In May 2021, Plaintiff Sokolovski received notification from the FOP Union stating that he was being sent for termination by Superintendent Brown for insubordination for failure to comply with the "City of Chicago COVID-19 Vaccination Policy."

227.     Since the notification about his termination, Plaintiff Sokolovski has not heard anything from the City, from the Union, from anyone regarding the status of this.

228.     Plaintiff Sokolovski eventually resigned from the City of Chicago Police Department in July 2022 due to the stressors, coercion, and pressures from the City of Chicago regarding the COVID-19 vaccination issues.

229.     In September 2022, Plaintiff Sokolovski reapplied for the City of Chicago Police Department and to this day, he has not heard back about the status of this position, despite repeated attempts to gain clarification on the rehiring process and whether his CR is hindering his reacceptance.

230.     Plaintiff Sokolovski was in a non-disciplinary, no-pay status from January 17, 2021 through March 23, 2022, before returning to work at the 311 Call Center.

**Plaintiff Garcia**

231.     Plaintiff Garcia began employment with the City of Chicago Police Department on November 27, 2004, as a police officer.

232.     Plaintiff Garcia has a sincerely held religious belief in Catholicism, a religion that he has been practicing throughout his life.

233.     On October 14, 2021, Plaintiff Garcia submitted his request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Catholic faith.

234.     Plaintiff Garcia did not include a religious leader's signature at the bottom of this religious exemption/accommodation request form.

235.     Plaintiff Garcia did not enter his vaccination status into the Portal by October 15, 2021.

236.     Plaintiff Garcia had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

237.     On November 9, 2021, Plaintiff Garcia received an email from the City of Chicago Department of Human Resources for COVID exemptions requesting that Plaintiff Garcia provide a religious leader's signature on his exemption request under section III and that he complete the COVID-19 Vaccine Religious Exemption Follow Up Form, which sought to verify that his purported religious beliefs were sincerely held.

238.     On November 16, 2021, Plaintiff Garcia was ordered to comply with the Portal, but he respectfully refused.

239.     At this time, Plaintiff Garcia was stripped of his star, badge, and ID.

240.     Plaintiff Garcia was then taken to a second room and given another chance to comply with the Portal requirements, but he respectfully refused a second time.

241.     Later that same day, on November 16, 2021, Deputy Chief Talley made a direct order for Plaintiff Garcia to comply with the Portal requirements, but for a third time, he respectfully refused.

242.     Plaintiff Garcia received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

243.     Plaintiff Garcia was placed in a non-disciplinary, no-pay status as a result of his noncompliance with the Portal on November 16, 2021.

244.     On December 17, 2021, Plaintiff Garcia's religious exemption/accommodation request form was denied for failure to provide additional information, namely, a signature of a religious leader in section III of the exemption form and the filled out COVID-19 Vaccine Religious Exemption Follow Up Form.

245.     On January 6, 2022, Plaintiff Garcia complied with the Portal requirements and submitted that he was not vaccinated; however, despite his privacy concerns, he felt pressured into signing it with concerns of continued loss of pay since his religious exemption/accommodation request was denied.

246.     Plaintiff Garcia complied with the weekly testing submissions on the Testing Portal by sometimes submitting his results, however, he was never punished for not uploading tests as frequently as was required.

247.     On January 6, 2022, Plaintiff Garcia was reinstated to the City of Chicago Police Department with full police powers and was given his badge, star, and ID back.

248.     Plaintiff Garcia did not have to pass any physical, mental, or drug tests to regain employment.

249.     On March 5, 2022, Plaintiff Garcia resubmitted his religious exemption/accommodation request. This time he signed the COVID-19 Vaccine Religious Exemption Follow Up Form and had Serio de la Torre sign the religious leader section of the exemption request.

250.     On March 28, 2022, Plaintiff Garcia's second religious exemption/accommodation request was approved.

251.     On or around September 12, 2022, Plaintiff Garcia was notified that he was going to be suspended for 5 days for his noncompliance with the Portal.

252.     Plaintiff Garcia was in a non-disciplinary, no-pay status from November 16, 2021 through January 16, 2022, before returning to work full duty as a police officer.

**Plaintiff Ortega**

253.     Plaintiff Ortega began employment with the City of Chicago Police Department on October 16, 2017, as a police officer.

254.     Plaintiff Ortega has a sincerely held religious belief in Christianity, a religion that she has been practicing throughout her life.

255.     On October 14, 2021, Plaintiff Ortega submitted her request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious belief in the Catholic/Christian faith.

256.     Plaintiff Ortega did not include a religious leader's signature at the bottom of this religious exemption/accommodation request form.

257.     Plaintiff Ortega had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

258.     Plaintiff Ortega did not enter her vaccination status into the Portal by October 15, 2021.

259.     The City of Chicago Department of Human Resources for COVID exemptions requested that Plaintiff Ortega provide a religious leader's signature on her exemption request under section III, which sought to verify that her purported religious beliefs were sincerely held.

260.     Shortly thereafter, Plaintiff Ortega submitted another religious exemption/ accommodation request with a religious leader's signature in section III.

29

261.     On November 10, 2021, Plaintiff Ortega was sent to headquarters for a counseling session to urge her to comply with the Portal, however, she respectfully refused to comply with the Portal.

262.     Later on November 10, 2021, Plaintiff Ortega was ordered to comply with the Portal by Deputy Chief Gushes, but she respectfully refused for a second time.

263.     At this time, Plaintiff Ortega was stripped of her police powers and handed over her star, badge, and ID.

264.     Plaintiff Ortega received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

265.     On November 29, 2021, Plaintiff Ortega was placed in a non-disciplinary, no-pay status as a result of her noncompliance with the Portal on November 10, 2021.

266.     On November 30, 2021, Plaintiff Ortega reached out to the Department of Human Resources for COVID exemptions to ask how to comply with the portal.

267.     Plaintiff Ortega complied with the Portal requirements and submitted that she was not vaccinated; however, despite her privacy concerns, she felt pressured into signing it with threats of suspension, termination, and continued loss of pay.

268.     On November 30, 2022, Plaintiff Ortega was reinstated to the City of Chicago Police Department with full police powers and was given her badge, star, and ID back.

269.     Plaintiff Ortega did not have to pass any physical, mental, or drug tests to regain employment.

270.     Plaintiff Ortega complied with the weekly testing submissions on the Testing Portal by uploading her COVID-19 test results when she was supposed to.

271.     Plaintiff Ortega was never informed that she was up for termination for her noncompliance with the Portal.

272.     On March 10, 2022, Plaintiff Ortega submitted a second religious exemption/accommodation request from the "City of Chicago's COVID-19 Vaccination Policy" based on

30

her sincerely held religious beliefs, and signed the COVID-19 Vaccine Religious Exemption Follow Up Form.

273.     In April 2022, Plaintiff Ortega's religious exemption/ accommodation request was approved.

274.     Plaintiff Ortega was in a non-disciplinary, no-pay status from November 10, 2021 through November 30, 2021, before returning to work full duty as a police officer.

**Plaintiff Bilina**

275.     Plaintiff Bilina began employment with the City of Chicago Police Department on September 1, 2010, as a police officer.

276.     On October 14, 2021, Plaintiff Bilina submitted a Conscientious exemption to the "City of Chicago's COVID-19 Vaccination Policy."

277.     Plaintiff Bilina had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

278.     Plaintiff Bilina did not enter his vaccination status into the Portal by October 15, 2021.

279.     On November 16, 2021, Plaintiff Bilina was called to headquarters for a counseling session to urge him to enter his vaccination status into the Portal, however, he respectfully refused to comply with the Portal.

280.     At this time, Plaintiff Bilina was stripped of his police powers and forced to hand over his star, badge, and ID for noncompliance with the Portal requirements.

281.     Plaintiff Bilina was then taken to a second room where he was asked again if he was going to comply with the Portal, and for a second time, Plaintiff Bilina respectfully refused to comply with the Portal.

282.     Later that same day, on November 16, 2021, Plaintiff Bilina was ordered to comply with the Portal by Deputy Chief Talley, but he respectfully refused for the third time.

283.     Plaintiff Bilina received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

284.     On November 16, 2021, Plaintiff Bilina was placed in a non-disciplinary, no-pay status as a result of his noncompliance with the Portal.

285.     On November 21, 2021, the City of Chicago Department of Human Resources for COVID exemptions denied Plaintiff Bilina's conscientious exemption, stating it wanted him to use the religious exemption form provided by the city.

286.     The following day, November 22, 2022, Plaintiff Bilina submitted his request for a religious accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Catholic faith, and he included an in-depth letter outlining his religious beliefs.

287.     Plaintiff Bilina has a sincerely held religious belief in Catholicism, a religion that he has been practicing throughout his life.

288.     Plaintiff Bilina did not include a religious leader's signature in section III at the bottom of his religious exemption/ accommodation request form, and he wrote "not legally required" in the space provided.

289.     On December 8, 2021, Plaintiff Bilina complied with the Portal requirements and submitted that he was not vaccinated; however, despite his privacy concerns, he felt pressured into signing it with threats of suspension, termination, continued loss of pay, and loss of health care.

290.     On December 8, 2021, Plaintiff Bilina was reinstated to the City of Chicago Police Department with full police powers and was given his badge, star, and ID back.

291.     Plaintiff Bilina had an approved furlough that lasted until December 29, 2021.

292.     On December 22, 2021, the City of Chicago Department of Human Resources for COVID exemptions requested that Plaintiff Bilina fill out the "COVID-19 Vaccine Religious

Exemption Follow Up" form and provide a religious leader's signature on his exemption request under section III, which sought to verify that his purported religious beliefs were sincerely held.

293.    On December 29, 2021, Plaintiff Bilina resubmitted his religious exemption/ accommodation request to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Catholic faith.

294.    Plaintiff Bilina signed the COVID-19 Vaccine Religious Exemption Follow Up Form, however, he crossed out a sentence that read, "I do not use, nor will I use, any of the medications listed above," referring to common household medications.

295.    Plaintiff Bilina also submitted a letter stating that "the exemption request does not require the level of attestation being demanded by the City in order to submit and/or be considered for a religious exemption."

296.    The Department of Human Resources for COVID exemptions notified Plaintiff Bilina that the "City of Chicago's COVID-19 Vaccination Policy" would have to be properly filled out and that he would need a religious leader's signature in order to have his exemption approved.

297.    Plaintiff Bilina did not have to reapply for his job, and he did not have to pass any physical, mental, or drug tests to regain employment.

298.    Plaintiff Bilina rarely complied with the weekly testing submissions on the Testing Portal, however, he was never punished for not uploading tests as frequently as was required.

299.    Plaintiff Bilina was never informed that he was up for termination for his noncompliance with the Portal.

300.    On February 24, 2022, the Department of Human Resources notified Plaintiff Bilina that because the additional information it had requested was incomplete, his request for a religious exemption was denied.

301.    On February 28, 2022, Plaintiff Bilina resubmitted his request for a religious accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Catholic faith.

302. On March 1, 2022, Plaintiff Bilina received an email from the Department of Human Resources stating that because the additional information it had requested was incomplete, his request for a religious exemption was denied.

303. That same day, Plaintiff Bilina emailed back asking what was incomplete with his request since he had all the forms signed and turned in.

304. On March 3, 4, 5, and 7, 2022, Plaintiff Bilina resent his forms and asked for an update regarding the status of his exemption.

305. On March 11, 2022, Plaintiff Bilina submitted a new religious exemption/accommodation request form to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious belief in the Catholic faith.

306. Plaintiff Bilina's March 11, 2022 exemption request included a signature of religious leader Reverend Rafal Stecz in section III of the form.

307. Plaintiff Bilina's March 11, 2022 exemption request also included the signed COVID-19 Vaccine Religious Exemption Follow Up Form where he crossed out a sentence that read, "I do not use, nor will I use, any of the medications listed above."

308. Plaintiff Bilina emailed the vaccine exemption email account to check on the status of his religious exemption/ accommodation request on March 11, 12, 14, 15, 16, 17, 18, 19, 21, 22, 24, 25, 26, and 28, 2022.

309. On April 1, 2022, the Department of Human Resources responded to Plaintiff Bilina and informed him that the religious exemption request was rejected because the alterations to the COVID-19 Vaccine Religious Exemption Follow Up Form were not sufficient.

310. On April 4, 2022, Plaintiff Bilina submitted the signed COVID-19 Vaccine Religious Exemption Follow Up Form without any alterations.

311. On April 8, 2022, Plaintiff Bilina resubmitted the signed COVID-19 Vaccine Religious Exemption Follow Up Form without any alterations.

312.     On April 8, 2022, the Department of Human Resources for COVID exemptions confirmed receipt of Plaintiff Bilina's updated information.

313.     On April 7, 2022, Deputy Commissioner, Judith Marrs, signed Plaintiff Bilina's exemption determination approving his religious accommodation.

314.     On April 11, 2022, Manager of Police Personnel, Jermeka Jackson, signed Plaintiff Bilina's exemption determination approving his religious accommodation.

315.     On April 11, 2022, Plaintiff Bilina's religious exemption request/accommodation was approved by the Department of Human Resources for COVID exemptions.

316.     Plaintiff Bilina was in a non-disciplinary, no-pay status from November 16, 2021 through December 9, 2021, before returning to work full duty as a police officer.

**Plaintiff Hilliard**

317.     Plaintiff Hilliard began employment with the City of Chicago Police Department on October 27, 2003, as a police officer.

318.     On October 14, 2021, Plaintiff Hilliard submitted a Conscientious exemption to the "City of Chicago's COVID-19 Vaccination Policy."

319.     Plaintiff Hilliard had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

320.     Plaintiff Hilliard did not enter his vaccination status into the Portal by October 15, 2021.

321.     On October 17, 2021, Plaintiff Hilliard was called to headquarters and ordered to enter his vaccination status into the Portal by Deputy Chief Snelling, but he respectfully refused.

322.     On October 17, 2021, Plaintiff Hilliard was placed in a non-disciplinary, no-pay status as a result of his noncompliance with the Portal.

323.     On October 17, 2021, Plaintiff Hilliard was stripped of his police powers and forced to hand over his badge, star, and ID as a result of his noncompliance with the Portal.

Case: 1:23-cv-02249 Document #: 1 Filed: 04/10/23 Page 38 of 79 PageID #:38

324.     On March 21, 2022, Plaintiff Hilliard submitted his request for a religious accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious beliefs.

325.     Plaintiff Hilliard did not include a religious leader's signature in section III at the bottom of his religious exemption/accommodation request form.

326.     The City of Chicago Department of Human Resources for COVID exemptions notified Plaintiff Hilliard that he would need a religious leader's signature in order to have his exemption approved.

327.     Plaintiff Hilliard resubmitted his request for a religious accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on his sincerely held religious beliefs, and he included the signature of a religious leader in section III of the form.

328.     On April 19, 2022, Plaintiff Hilliard's religious exemption/accommodation to the vaccine was approved, however, he was not made aware of this fact because he did not have access to his work email account anymore.

329.     On May 16, 2022, Plaintiff Hilliard requested an update on the status of his religious exemption/accommodation request, and he was informed by the Department of Human Resources for COVID exemptions that it was still under review, despite him later finding out it was already approved for a month at this point.

330.     It was not until June 20, 2022, that Plaintiff Hilliard was informed that his religious exemption/accommodation request was approved.

331.     On June 22, 2022, Plaintiff Hilliard complied with the Portal requirements and submitted that he was not vaccinated and had a religious accommodation.

332.     Plaintiff Hilliard complied with the weekly COVID-19 testing submissions on the Testing Portal.

333.     Plaintiff Hilliard did not have to pass any physical, mental, or drug tests to regain employment.

334. On June 22, 2022, Plaintiff Hilliard regained his employment with the City of Chicago, but his police officer status was not reinstated.

335. On June 22, 2022, Plaintiff Hilliard was no longer in a non-disciplinary, no-pay status.

336. Plaintiff Hilliard was placed at the 311 Call Center and given a desk job where he answers non-emergency calls and helps out with reports, and he has been doing this job since his reinstatement.

337. On June 23, 2022, Plaintiff Hilliard was re-stripped of his police powers because he didn't comply with the order to enter his vaccination status into the Portal back in October 2021, and he remains stripped of his police powers to this day.

338. Plaintiff Hilliard was in a non-disciplinary, no-pay status from October 17, 2021 through July 22, 2022, before returning to work at the 311 Call Center.

**Plaintiff Fox**

339. Plaintiff Fox began employment with the City of Chicago Police Department on August 31, 2012, as a police officer.

340. On October 12, 2021, Plaintiff Fox submitted a conscientious and a religious accommodation request to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious belief in the Catholic faith.

341. Plaintiff Fox has a sincerely held religious belief in Catholicism, a religion that she has been practicing throughout her life.

342. Plaintiff Fox's conscientious exemption was denied by the Department of Human Resources for COVID exemptions.

343. Plaintiff Fox did not include a religious leader's signature in section III at the bottom of her religious exemption/ accommodation request form.

344. Plaintiff Fox had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

345.     Plaintiff Fox did not enter her vaccination status into the Portal by October 15, 2021.

346.     On November 10, 2021, Plaintiff Fox was given three opportunities to comply with an order to enter her vaccination status into the Portal, but she respectfully refused each time.

347.     On November 10, 2021, Plaintiff Fox was placed in a non-disciplinary, no-pay status and was stripped of her police powers for non-compliance with the Portal requirements.

348.     On November 10, 2021, Plaintiff Fox received a CR for noncompliance with the "City of Chicago's COVID-19 Vaccination Policy."

349.     Plaintiff Fox applied for unemployment benefits, but she was denied these benefits due to the "misconduct" surrounding her disobeying the order to enter her vaccination status into the Portal on November 10, 2021.

350.     On November 12, 2021, Plaintiff Fox was sent the COVID-19 Vaccine Religious Exemption Follow Up Form, but she did not fill it out because she did not feel like it was lawful to expand or justify her religious beliefs.

351.     That same day, the City also reiterated that Plaintiff Fox needed to include a religious leader's signature in section III of the exemption request for in order to be approved.

352.     On November 16, 2021, Plaintiff Fox submitted a second religious exemption to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious beliefs.

353.     Again, Plaintiff Fox did not include a religious leader's signature in section III at the bottom of her religious exemption/ accommodation request form.

354.     On November 19, 2021, Plaintiff Fox reached out to the FOP Union asking for information about how to be reinstated, and she decided to enter her vaccination status into the Portal.

355.     On November 20, 2021, Plaintiff Fox was reinstated to the City of Chicago Police Department with full police powers and was given his badge, star, and ID back.

356.     Plaintiff Fox did not have to submit to any medical, physical, drug testing in order to return to work.

357.    Plaintiff Fox complied with the weekly testing submissions on the Testing Portal by

sometimes submitting her results, however, she was never punished for not uploading these tests

as frequently as was required.

358.    On December 18, 2021, the Department of Human Resources for COVID exemptions

emailed Plaintiff Fox that because the additional information it had requested was incomplete, her

request for a religious exemption was denied.

359.    On December 22, 2021, Plaintiff Fox resubmitted a third religious accommodation to the

"City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious beliefs.

360.    This time, Plaintiff Fox did include a religious leader's signature, Matthew Blair, in

section III at the bottom of her religious exemption/accommodation request form authenticating

the seriousness of her sincerely held religious beliefs.

361.    On January 27, 2022, Plaintiff Fox was ordered a 90-day suspension for her

noncompliance with the Portal.

362.    On February 23, 2022, Plaintiff Fox emailed Manager of Police Personnel, Jermeka

Jackson, for an update on her religious exemption/accommodation request, and it was this same

day that Ms. Jackson emailed Plaintiff Fox that it was approved.

363.    Plaintiff Fox was in a non-disciplinary, no-pay status from November 10, 2021 through

November 20, 2021, before returning to work full duty as a police officer.

**Plaintiff Maxwell**

364.    Plaintiff Maxwell began employment with the City of Chicago Police Department on

June 4, 2007, as a police officer.

365.    On October 14, 2021, Plaintiff Maxwell submitted her request for a conscientious

exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy."

366.    Plaintiff Maxwell did not enter her vaccination status into the Portal by October 15, 2021.

367.    By October 16, 2021, the Department of Human Resources for COVID exemptions had denied Plaintiff Maxwell's conscientious exemption, stating it wanted her to use the religious exemption form provided by the city.

368.    On October 22, 2021, Plaintiff Maxwell was sent to headquarters for a counseling session with Commander Joel to urge her to comply with the Portal, however, she refused to comply.

369.    Plaintiff Maxwell was then taken to a second room and given another chance to comply with the Portal requirements, but she respectfully refused a second time.

370.    At this time, Plaintiff Maxwell was stripped of her police powers and forced to hand over her star, shield, and police ID.

371.    Later that same day, on October 22, 2021, Plaintiff Maxwell waited numerous hours to be given a direct order by Deputy Chief Novalez who ordered Plaintiff Maxwell to comply with the Portal requirements, but for a third time, she respectfully refused.

372.    As a result of Plaintiff's Maxwell's noncompliance with the orders to comply with the Portal, she was placed in a non-disciplinary, no-pay status on October 22, 2021.

373.    On October 22, 2021, Plaintiff Maxwell received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

374.    Plaintiff Maxwell applied for unemployment benefits, and was initially approved, but this was later overturned and she was denied these benefits due to the "misconduct" surrounding her disobeying the order to enter her vaccination status into the Portal.

375.    In November 2021, after 30 days in a non-disciplinary, no-pay status, Plaintiff Maxwell lost access to her health insurance and life insurance.

376.    On February 25, 2022, Plaintiff Maxwell submitted her request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious beliefs.

40

377.     Plaintiff Maxwell did include religious leader Minister Tracey Villari's signature at the bottom of this religious exemption/ accommodation request form, authenticating the seriousness of her sincerely held religious beliefs.

378.     On February 26, 2021, the City of Chicago Department of Human Resources for COVID exemptions emailed Plaintiff Maxwell that it received her exemption request but questioned her genuineness and requested additional information regarding her religious exemption.

379.     That same day, Plaintiff Maxwell responded to the email and stated she included all necessary information and reattached her submission.

380.     On March 1, 2022, Plaintiff Maxwell reached out to Human Resources asking to come back to work.

381.     In order to return to work, Plaintiff Maxwell needed to comply with the Portal requirements which mandated that she put her vaccination status into the Portal.

382.     Additionally, she needed to submit COVID-19 test results twice weekly and upload her results to the Testing Portal.

383.     Plaintiff Maxwell had to be fingerprinted and pass physical, mental, and drug testing in order to regain employment with the City of Chicago.

384.     On March 2, 2022, Plaintiff Maxwell complied with the Portal requirements and submitted that she was not vaccinated; however, despite her privacy concerns, she felt pressured into signing it with threats of suspension, termination, and continued loss of pay.

385.     Plaintiff Maxwell did not comply with the weekly testing submissions on the Testing Portal, and was never punished for not uploading tests as required.

386.     Plaintiff Maxwell passed the required physical, mental, and drug testing required for her to regain employment with the City of Chicago.

387.     On March 10, 2022, Plaintiff Maxwell emailed the Department of Human Resources for COVID exemptions asking for a status update on her religious exemption/accommodation request that she submitted in February.

41

388.     On March 9, 2022, Deputy Commissioner, Judith Marrs, signed Plaintiff Maxwell's exemption determination approving her religious accommodation.

389.     On March 15 2022, Manager of Police Personnel, Jermeka Jackson, signed Plaintiff Maxwell's exemption determination approving her religious accommodation.

390.     On March 15, 2022, Plaintiff Maxwell received an email approving her religious exemption/accommodation request to the "City of Chicago COVID-19 Vaccination Policy."

391.     On March 16, 2022, Plaintiff Maxwell regained employment with the City of Chicago, but her police officer status was not reinstated.

392.     On March 16, 2022, Plaintiff Maxwell was no longer in a non-disciplinary, no-pay status.

393.     Plaintiff Maxwell was placed at the 311 Call Center and given a desk job where she answers non-emergency calls and helps out with reports, and she has been doing this job since her reinstatement.

394.     Plaintiff Maxwell received notification from the FOP Union stating that she was being sent for termination by Superintendent Brown for insubordination for failure to comply with the "City of Chicago COVID-19 Vaccination Policy."

395.     Since the notification about her termination, Plaintiff Maxwell has not heard anything from the City, from the Union, from anyone regarding the status of this.

396.     Plaintiff Maxwell has had her star unassigned to her in the data warehouse.

397.     To this day, Plaintiff Maxwell remains stripped of her police powers.

398.     Plaintiff Maxwell was in a non-disciplinary, no-pay status from October 22, 2021 through March 16, 2022, before returning to work at the 311 Call Center.

**Plaintiff Philp**

399.     Plaintiff Philp began employment with the City of Chicago Police Department in 2002, as a police officer.

400.     On October 14, 2021, Plaintiff Philp submitted her request for a conscientious exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy."

42

401.     Plaintiff Philp did not enter her vaccination status into the Portal by October 15, 2021.

402.     By October 16, 2021, the Department of Human Resources for COVID exemptions had denied Plaintiff Philp's conscientious exemption, stating it wanted her to use the religious exemption form provided by the City.

403.     On November 15, 2021, Plaintiff Philp was sent to headquarters and ordered to comply with the Portal by Deputy Chief Daniel O'Shea, but she respectfully refused.

404.     As a result, Plaintiff Philp was stripped of her police powers and forced to hand over her star, shield, and police ID.

405.     On November 15, 2021, Plaintiff Philp received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

406.     Plaintiff Philp has a sincerely held religious belief in Catholicism, a religion that she has been practicing throughout her life.

407.     On March 5, 2022, Plaintiff Philp submitted her request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious beliefs.

408.     Plaintiff Philp included a signature by religious leader Pastor Manfred Kron authenticating the seriousness of her sincerely held religious beliefs. Pastor Kron also wrote a letter to support his claims.

409.     Plaintiff Philp continuously followed up with the Department of Human Resources for COVID exemptions to check the status of her religious exemption/accommodation request.

410.     On March 14, 2022, Plaintiff Philp was ordered for a second time to comply with the Portal requirements, but she respectfully refused.

411.     As a result of her noncompliance, Plaintiff Philp was placed in a non-disciplinary, no-pay status starting on March 14, 2022.

412.     Additionally, Plaintiff Philp was stripped a second time for her noncompliance with the Portal requirements.

43

413.     By March 30, 2022, Plaintiff Philp's religious exemption/ accommodation request was approved by the Department of Human Resources for COVID exemptions.

414.     Plaintiff Philp did not ever enter her vaccination status into the Portal before returning to work on April 4, 2022.

415.     Plaintiff Philp did not have to submit to any medical, physical, drug testing in order to return to work.

416.     On April 4, 2022, Plaintiff Philp was reinstated to the City of Chicago Police Department with full police powers and was given her badge, star, and ID back.

417.     Plaintiff Philp never complied with the weekly testing submissions on the Testing Portal; however, she was never punished for not uploading these tests as frequently as required.

418.     Plaintiff Philp was placed on light duty in 2009, and she returned to her light duty position at the 311 Call Center on April 4, 2022.

419.     Plaintiff Philp was in a non-disciplinary, no-pay status from March 14, 2022 through April 4, 2022, before returning to work light duty at her 311 Call Center position.

**Plaintiff Shytell**

420.     Plaintiff Shytell began employment with the City of Chicago Police Department on June 26, 2006, as a police officer.

421.     On October 14, 2021, Plaintiff Shytell submitted her request for a conscientious exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy."

422.     Plaintiff Shytell had concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

423.     Plaintiff Shytell did not enter her vaccination status into the Portal by October 15, 2021.

424.     By October 16, 2021, the Department of Human Resources for COVID exemptions had denied Plaintiff Shytell's conscientious exemption, stating it wanted her to use the religious exemption form provided by the City.

44

425.     On December 21, 2021, Plaintiff Shytell was ordered to comply with the Portal, but she respectfully refused.

426.     As a result, Plaintiff Shytell was stripped of her police powers and forced to hand over her star, shield, and police ID.

427.     Additionally, on December 21, 2021, Plaintiff Shytell was placed in a non-disciplinary, no-pay status as a result of her noncompliance with the Portal requirements.

428.     On December 21, 2021, Plaintiff Shytell received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

429.     By December 27, 2021, Plaintiff Shytell complied with the Portal requirements and submitted that she was not vaccinated; however, despite her privacy concerns, she felt pressured into signing it with concerns of continued loss of pay.

430.     On December 28, 2021, Plaintiff Shytell was reinstated to the City of Chicago Police Department with full police powers and was given back her badge, star, and ID.

431.     Plaintiff Shytell did not have to pass any physical, mental, or drug tests to regain employment.

432.     Plaintiff Shytell complied with the weekly testing submissions on the Testing Portal by uploading her COVID-19 test results when she was supposed to.

433.     Plaintiff Shytell was never informed that she was up for termination for her noncompliance with the Portal.

434.     On February 24, 2022, Plaintiff Shytell submitted her request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious beliefs in Christianity which included a religious leader's signature in Section III authenticating the seriousness of her sincerely held religious beliefs.

435.     By March 15, 2022, the City of Chicago Department of Human Resources for COVID exemptions approved Plaintiff Shytell's religious exemption/accommodation request.

45

436.     Plaintiff Shytell was in a non-disciplinary, no-pay status from December 21, 2021 through December 28, 2021, before returning to work full duty as a police officer.

**Plaintiff Hatfield**

437.     Plaintiff Hatfield began employment with the City of Chicago Police Department on February 19, 2019, as a police officer.

438.     On October 14, 2021, Plaintiff Hatfield submitted her request for a conscientious exemption accommodation to the "City of Chicago's COVID-19 Vaccination Policy."

439.     Plaintiff Hatfield did not enter her vaccination status into the Portal by October 15, 2021.

440.     By October 16, 2021, the Department of Human Resources for COVID exemptions had denied Plaintiff Hatfield's conscientious exemption, stating it wanted her to use the religious exemption form provided by the city.

441.     On November 17, 2022, Plaintiff Hatfield was given three opportunities to comply with the Portal, but she respectfully refused each order.

442.     On November 17, 2022, Plaintiff Hatfield received a CR for noncompliance with the "City of Chicago COVID-19 Vaccination Policy."

443.     On November 18, 2022, Plaintiff Hatfield was stripped of her police powers by Deputy Chief Talley and forced to hand over her star, shield, and police ID.

444.     As a result of Plaintiff Hatfield's noncompliance with the orders to comply with the Portal, she was placed in a non-disciplinary, no-pay status starting on November 18, 2022.

445.     After 30 days in a non-disciplinary, no-pay status, Plaintiff Hatfield lost access to her health insurance.

446.     Plaintiff Hatfield has a sincerely held religious belief in Christianity, a religion that she has been practicing throughout her life.

447.     On February 27, 2022, Plaintiff Hatfield submitted her request for a religious exemption/ accommodation to the "City of Chicago's COVID-19 Vaccination Policy" based on her sincerely held religious belief in Christianity.

448.     Plaintiff Hatfield did include religious leader Matthew Blair's signature at the bottom of this religious exemption/accommodation request form, authenticating the seriousness of her sincerely held religious beliefs.

449.     The City of Chicago Department of Human Resources for COVID exemptions emailed Plaintiff Hatfield that it received her exemption request but questioned her genuineness and requested additional information regarding her religious exemption.

450.     The City of Chicago Department of Human Resources for COVID exemptions requested that Plaintiff Hatfield fill out the "COVID-19 Vaccine Religious Exemption Follow Up" form, which sought to verify that her purported religious beliefs were sincerely held.

451.     Plaintiff Hatfield did not sign this additional form because her religious exemption request was not based on any fetal cell argument and she did not agree with the City prying for more personal information in order to prove that her religious exemption request was genuine.

452.     By March 4, 2022, the Department of Human Resources for COVID exemptions denied Plaintiff Hatfield's religious accommodation request to the "City of Chicago's COVID-19 Vaccination Policy."

453.     On March 11, 2022, Plaintiff Hatfield complied with the Portal requirements and submitted that she was not vaccinated; however, despite her privacy concerns, she felt pressured into signing it with threats of suspension, termination, and continued loss of pay.

454.     Plaintiff Hatfield was required to pass a physical, mental, and drug test before regaining employment with the City of Chicago.

455.     In order to return to work, Plaintiff Hatfield needed to comply with the Portal requirements which mandated that she submit COVID-19 test results twice weekly and upload her results to the Testing Portal.

456.     Plaintiff Hatfield complied with the weekly testing submissions on the Testing Portal.

457.     On March 14, 2022, Plaintiff Hatfield regained employment with the City of Chicago, but her police officer status was not reinstated.

458.     On March 14, 2022, Plaintiff Hatfield was no longer in a non-disciplinary, no-pay status.

459.     Once Plaintiff Hatfield returned to work on March 14, 2022, she was placed at the 311 Call Center and given a desk job where she answered non-emergency calls and helped out with reports.

460.     After returning to work for the Defendant, Plaintiff Hatfield decided it was necessary that she take a stress leave from work as a result of all the stress and pressures the City placed on her regarding this vaccination process.

461.     Plaintiff Hatfield resubmitted her religious accommodation/exemption request numerous times to the City of Chicago Department of Human Resources for COVID exemptions, and it was not until April 6, 2022, that her religious exemption request was approved.

462.     On June 23, 2022, Plaintiff Hatfield returned to her job at the 311 Call Center, and she has been doing this job since her reinstatement.

463.     The same day that Plaintiff Hatfield returned to work for the City, she was immediately told to go to headquarters where she was stripped for a second time for noncompliance with the Portal.

464.     Plaintiff Hatfield received notification from the FOP Union stating that she was being sent for termination by Superintendent Brown for insubordination for failure to comply with the "City of Chicago COVID-19 Vaccination Policy."

465.     Since the notification about her termination, Plaintiff Maxwell has not heard anything from the City, from the Union, from anyone regarding the status of this.

466.     To this day, Plaintiff Hatfield remains stripped of her police powers.

467.     Plaintiff Hatfield was in a non-disciplinary, no-pay status from November 18, 2021 through March 14, 2022, before returning to work at the 311 Call Center.

### COUNT 1: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(All Plaintiffs v. Defendant)

468.    Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint as if fully restated herein.

469.    Title VII provides that "[i]t shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

470.    Under Title VII, religion "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

471.    To establish a prima facie case of religious discrimination "based on an employer's failure to provide reasonable accommodation, a plaintiff 'must show (i) that the observance or practice conflicting with an employment requirement is religious in nature, (ii) that he called the religious observance or practice to his employer's attention, and (iii) that the religious observance or practice was the basis for his discharge or other discriminatory treatment.'" *Porter*, 700 F.3d 944 at 951.

472.    "Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." *Id*.

473.    All Plaintiffs submitted a religious exemption/accommodation request in opposition to the "City of Chicago's COVID-19 Vaccination Policy."

474.    All Plaintiffs' religious exemption/accommodation requests are based on sincerely held religious beliefs.

475.    The City of Chicago's requirement that all of its employees be vaccinated against COVID-19 and enter their status into the Portal conflicts with all Plaintiffs' religious beliefs.

476.    All Plaintiffs argue that the Policy forcing vaccination and reporting to the Portal goes against their sincerely held religious beliefs, as evidence in the Plaintiffs' numerous religious exemption/accommodation requests.

477.    All Plaintiffs have called their religious practices to the City of Chicago's attention by submitting religious exemption/ accommodation request forms in opposition to the "City of Chicago's COVID-19 Vaccination Policy."

478.    Additionally, Plaintiffs Kondilis, Kazarnowicz, and Mingari have called their religious practices to the City of Chicago's attention by formally filing a Charge of Discrimination with the EEOC.

479.    All Plaintiffs have been discriminated against by the City of Chicago for filing their religious exemption/accommodation request form because:

    a.  All Plaintiffs received a CR for noncompliance with the Portal requirements;

    b.  All Plaintiffs were stripped of their police powers as a result of their noncompliance with the Portal requirements;

    c.  All Plaintiffs have spent numerous months in a non-disciplinary, no-pay status as a result of their noncompliance with the Portal requirements;

    d.  All Plaintiffs have spent numerous months waiting for their religious exemption/ accommodation request to the "City of Chicago's COVID-19 Vaccination Policy" to be approved; and

    e.  All Plaintiffs cannot return to work until they comply with the Portal requirements, despite the City's knowledge that these individuals are not vaccinated due to the religious exemption/accommodation requests that were granted.

480.     The City of Chicago Department of Human Resources for covid exemptions required that all Plaintiffs have a religious leader's signature on their religious exemption/ accommodation request in order for it to get approved.

481.     Most Plaintiffs were sent the COVID-19 Vaccine Religious Exemption Follow Up Form to elaborate on the sincerity of their religious beliefs.

482.     The United States Supreme Court does not require the level of inquiry being raised by the City; rather, an objection based on a sincerely held religious belief is enough to invoke Plaintiffs' First Amendment protections to seek and obtain a religious exemption. *Frazee v. Illinois Dept. of Empl. Sec.*, 489 U.S. 829 (1989).

483.     The City of Chicago's Department of Human Resources for COVID exemptions approved Plaintiffs' religious exemption request/accommodation which enforces the idea that they are not vaccinated against COVID-19.

484.     The City of Chicago's Department of Human Resources for COVID exemptions has knowledge of Plaintiffs' vaccination status based on the fact that it received and approved their vaccination exemption request/accommodation.

485.     The City of Chicago's Department of Human Resources for COVID exemptions is aware of Plaintiffs' vaccination status since it granted their religious vaccine exemption, and the mandated use of a Portal to convey information already known is redundant, excessive, and the City's way of enforcing discrimination upon those who have sought religious accommodations from the vaccine.

486.     The City of Chicago has not made any reasonable accommodations for the Plaintiffs based on their religious practices or shown that any reasonable accommodation would result in undue hardship.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as

determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

### COUNT 2: RELIGIOUS DISCRIMINATION UNDER THE ILLINOIS HUMAN RIGHTS ACT
(All Plaintiffs v. Defendant)

487.	Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint as if fully restated herein.

488.	"[D]iscrimination and retaliation claims brought pursuant to IHRA are evaluated under the same standards and tests as those brought under Title VII." *Sabet v. City of Chicago*, 2020 WL 832360 (N.D. Ill. 2020).

489.	To establish a prima facie case of religious discrimination "based on an employer's failure to provide reasonable accommodation, a plaintiff 'must show (i) that the observance or practice conflicting with an employment requirement is religious in nature, (ii) that he called the religious observance or practice to his employer's attention, and (iii) that the religious observance or practice was the basis for his discharge or other discriminatory treatment." *Porter*, 700 F.3d 944 at 951.

490.	"Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." *Id.*

491.	All Plaintiffs submitted a religious exemption/accommodation request in opposition to the "City of Chicago's COVID-19 Vaccination Policy."

492.	All Plaintiffs' religious exemption/accommodation requests are based on sincerely held religious beliefs.

493.	The City of Chicago's requirement that all of its employees be vaccinated against COVID-19 and enter their status into the Portal conflicts with all Plaintiffs' religious beliefs.

494.	All Plaintiffs argue that the forced vaccination and reporting to the Portal policies of the City of Chicago go against their sincerely held religious beliefs.

495.     All Plaintiffs have called their religious practices to the City of Chicago's attention by submitting religious exemption/ accommodation request forms in opposition to the "City of Chicago's COVID-19 Vaccination Policy."

496.     Additionally, Plaintiffs Kondilis, Kazarnowicz, and Mingari have called their religious practices to the City of Chicago's attention by formally filing a Charge of Discrimination with the EEOC.

497.     All Plaintiffs have been discriminated against by the City of Chicago for filing their religious exemption/accommodation request form because:

    f.   All Plaintiffs received a CR for noncompliance with the Portal requirements by the October 15, 2021 deadline;

    g.   All Plaintiffs were stripped of their police powers as a result of their noncompliance with the Portal requirements;

    h.   All Plaintiffs have spent numerous months in a non-disciplinary, no-pay status as a result of their noncompliance with the Portal requirements;

    i.   All Plaintiffs have spent numerous months waiting for their religious exemption/ accommodation request to the "City of Chicago's COVID-19 Vaccination Policy" to be approved; and

    j.   All Plaintiffs cannot return to work until they comply with the Portal requirements, despite the City's knowledge that these individuals are not vaccinated due to the religious exemption/accommodation requests that were granted.

498.     The City of Chicago Department of Human Resources for covid exemptions required that all Plaintiffs have a religious leader's signature on their religious exemption/ accommodation request in order for it to get approved.

499.     Most Plaintiffs were sent the COVID-19 Vaccine Religious Exemption Follow Up Form to elaborate on the sincerity of their religious beliefs.

500.    The United States Supreme Court does not require the level of inquiry being raised by the City; rather, an objection based on a sincerely held religious belief is enough to invoke Plaintiffs' First Amendment protections to seek and obtain a religious exemption. *Frazee v. Illinois Dept. of Empl. Sec.*, 489 U.S. 829 (1989).

501.    Notwithstanding the fact that Defendant approved Plaintiffs Kondilis and Mingari's exemption from the COVID-19 Vaccination Policy, Defendant has yet to allow Plaintiffs to return to work until they comply with the Portal.

502.    Plaintiffs Kondilis and Mingari have continued concerns about the privacy and security involved in the use of the Portal since the City had not provided any HIPPA disclaimers or assurances that the Portal is a private, secure platform.

503.    The City of Chicago's Department of Human Resources for COVID exemptions approved Plaintiffs' religious exemption request/accommodation which enforces the idea that they are not vaccinated against COVID-19.

504.    The City of Chicago's Department of Human Resources for COVID exemptions has knowledge of Plaintiffs' vaccination status based on the fact that it received and approved their vaccination exemption request/accommodation.

505.    The City of Chicago's Department of Human Resources for COVID exemptions is aware of Plaintiffs' vaccination status since it granted their religious vaccine exemption, and the mandated use of a Portal to convey information already known is redundant, excessive, and the City's way of enforcing discrimination upon those who have sought religious accommodations from the vaccine.

506.    The City of Chicago has not made any reasonable accommodations for the Plaintiffs based on their religious practices or shown that any reasonable accommodation would result in undue hardship.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor, and against Defendant City of Chicago, and enter and order all available

and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 3: DEPRIVATION OF FIRST AMENDMENT RIGHT TO FREELY EXERCISE RELIGION VIA 42 U.S.C. § 1983
(All Plaintiffs v. Defendant)

507.     Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint as if fully restated herein.

508.     The First Amendment's Free Exercise Clause provides that no law will prohibit the free expression of religion. U.S. Const. amend. I.

509.     The "principle that [the] government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to protection of rights guaranteed by free exercise clause. U.S.C.A. Const.Amend. 1." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

510.     "The Free Exercise Clause, however, is not absolute: laws that incidentally burden particular religious practices do not violate the Free Exercise Clause as long as they are neutral and generally applicable." *Filinovich v. Claar*, 2006 WL 1994580, *3 (N.D. Ill. 2006).

511.     "[F]acially neutral rules that have the practical effect of covertly suppressing particular religious beliefs" are prohibited by the Free Exercise Clause of the First Amendment. *Filinovich* at *4; *Bowen v. Roy*, 476 U.S. 693, 703 (1986). "Thus, if a rule adversely impacts only the practices or beliefs of a particular group, without identifying any legitimate purpose for the rule, the rule is not neutral." *Id*. (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993). "In a similar vein, laws are not generally applicable if they selectively impose burdens only on conduct that is motivated by religious beliefs." *Id*.

512.     "[T]he Free Exercise Clause [ ] recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state." *Sch. Dist. of Abington Township,*

*Pennsylvania v. Schempp*, 374 U.S. 203, 222 (1963). Consequently, government actors are prohibited from exerting "any restraint on the free exercise of religion." *Id*. at 222-23.

513.     To state a claim under the Free Exercise clause, plaintiffs "must show the coercive effect of the enactment [or government invasion] as it operates against [her] in the practice of [her] religion." *Id*. at 223; see also *Harless v. Darr*, 937 F. Supp. 1339, 1347 (S.D.Ind.1996); *Olojo v. Kennedy-King Coll.*, No. 05 C 6234, 2006 WL 1648441, at *5 (N.D. Ill. June 7, 2006).

514.     The document titled "City of Chicago COVID-19 Vaccination Policy" was applied to all Plaintiffs, who have sincerely-held religious beliefs.

515.     The document was not generally applicable and it selectively burdened Plaintiffs because in late 2021 and throughout 2022 employees were required to be vaccinated and report their COVID-19 status on the Portal, against Plaintiffs religious beliefs, as evidenced in their numerous religious exemption/accommodation requests.

516.     Many City of Chicago employees refused to be vaccinated and comply with the Portal requirements, and the City did not put these employees in a non-disciplinary, no-pay status.

517.     The City of Chicago ordered its employees, and Plaintiffs, to comply with the Portal requirements at different times in 2021. (*see chart 1 above*)

518.     The policy mandating vaccination against COVID-19 was not evenhandedly applied because it imposed burdens only on Plaintiffs because this practice went against their religious beliefs, as evidenced in their numerous religious exemption/accommodation requests.

519.     The City of Chicago is prohibited from exerting "any restraint on the free exercise of religion;" however, it required Plaintiffs to have a religious leader's signature on their religious exemption/ accommodation request in order for it to get approved and most Plaintiffs were forced to sign the COVID-19 Vaccine Religious Exemption Follow Up Form to elaborate on the sincerity of their religious beliefs in order for their religious exemptions to be granted.

520.     The United States Supreme Court does not require the level of inquiry being raised by the City; rather, an objection based on a sincerely held religious belief is enough to invoke Plaintiffs'

First Amendment protections to seek and obtain a religious exemption. *Frazee v. Illinois Dept. of Empl. Sec.*, 489 U.S. 829 (1989).

521.     The City of Chicago's Department of Human Resources for COVID exemptions approved Plaintiffs' religious exemption request/accommodation which enforces the idea that they are not vaccinated against COVID-19.

522.     The City of Chicago's Department of Human Resources for COVID exemptions has knowledge of Plaintiffs' vaccination status based on the fact that it received and approved their vaccination exemption request/accommodation.

523.     The City of Chicago's Department of Human Resources for COVID exemptions is aware of Plaintiffs' vaccination status since it granted their religious vaccine exemption, and the mandated use of a Portal to convey information already known is redundant, excessive, and the City's way of enforcing discrimination upon those who have sought religious accommodations from the vaccine.

524.     Based on the foregoing, the document titled "City of Chicago COVID-19 Vaccination Policy" was not generally applicable and, accordingly, its application to Plaintiffs violated their First Amendment right to the free exercise of religion.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendant City of Chicago, and enter and order all available and appropriate relief with interest, including special and compensatory damages in an amount up to $2,500,000 or as determined by a jury, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

### COUNT 4: DECLARATORY JUDGMENT THAT PLAINTIFFS' NO-PAY STATUS IS UNLAWFUL
(All Plaintiffs v. Defendant)

525.     Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint as if fully restated herein.

526. Illinois statute authorizes courts to make "binding declarations of rights, having the force of final judgments. . ." 735 ILCS 5/2-701, et seq.

527. In Fall 2021, a document titled "City of Chicago COVID-19 Vaccination Policy" began circulating among City of Chicago employees and officials as purportedly City policy.

528. The "City of Chicago COVID-19 Vaccination Policy" has not been validly-enacted as policy by any government official or body with power to enact it.

529. The Mayor did not issue the document titled "City of Chicago COVID-19 Vaccination Policy" by executive order.

530. The City Council did not pass the document titled "City of Chicago COVID-19 Vaccination Policy."

531. The Department of Public Health did not enact the document titled "City of Chicago COVID-19 Vaccination Policy."

532. The Chicago Police Department did not enact the document titled "City of Chicago COVID-19 Vaccination Policy" and, indeed, it could not do so because the document on its face purports to apply to all City employees.

533. The Department of Human Resources did not pass the document titled "City of Chicago COVID-19 Vaccination Policy."

534. No other governmental body or official took action to enact the document titled "City of Chicago COVID-19 Vaccination Policy" as bona fide City policy.

535. Instead, the "City of Chicago COVID-19 Vaccination Policy" has merely been circulated and represented as City policy, but without it having any lawful pedigree from a source with power to create news terms and conditions of employment for Chicago employees.

536. The document titled "City of Chicago COVID-19 Vaccination Policy" is little more than a document with words on it being used as City policy when, in fact, no legal authority has properly passed, pronounced, or enacted the document as City policy through lawful means.

537.     This same document called the "City of Chicago COVID-19 Vaccination Policy" was used as the basis to place Plaintiffs in a non-disciplinary, no-pay status for an undetermined amount of time, yet the document itself has not been duly enacted by any appropriate authority within the City of Chicago as bona fide policy.

538.     Without a lawful pedigree, the document is not bona fide City policy, and cannot be used as a basis to keep Plaintiffs in a no-pay status for an undetermined amount of time or until they comply with the Portal requirements.

539.     Plaintiffs have a tangible interest in the outcome of this suit in that Plaintiffs have been unable to work, have had a loss of salary, and a loss of benefits on the basis of the document titled "City of Chicago COVID-19 Vaccination Policy."

540.     Plaintiffs have suffered damages as a result of Defendant City applying the document titled "City of Chicago COVID-19 Vaccination Policy," including lost pay and benefits.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, and against Defendant City of Chicago, declare that Plaintiffs' placement in a no-pay status for an undetermined amount of time is unlawful because the document titled "City of Chicago COVID-19 Vaccination Policy" has no lawful pedigree and was not lawfully applied to Plaintiffs, and enter and order all available legal and equitable relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 4 – INDEMNIFICATION
### (All Plaintiffs v. Defendant)

541.     Plaintiffs restate and incorporate by reference all other paragraphs of this Complaint as if fully restated herein.

542.     Illinois statute provides that a local public entity such as the City of Chicago, Illinois is obligated to assume financial responsibility for the actions committed by its officials or employees. *See* 745 ILCS §§ 10/1-202, 10/2-302, and 10/9-102.

543.     Defendant City of Chicago, Illinois is obligated to assume such financial responsibility for its actions.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order directing City of Chicago, Illinois to pay, indemnify, and assume financial responsibility for the actions and/or omissions committed by Defendants for the harms they caused to Plaintiffs alleged herein.

## CONCLUSION

FOR THE FOREGOING REASONS, Plaintiffs pray that this Honorable Court grant the relief sought in all Counts in this Complaint.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL COUNTS**

Respectfully submitted,

**ADRIANNA KONDILIS, BRANDEN LISCIANDRELLO, EDWARD GARCIA, JOSEPH MIRANDA, JULIE ORTEGA, MARCIN KAZARNOWICZ, MIKE BILINA, ROBERT HILLIARD, STEFANIE MINGARI, STEPHANIE FOX, VICTOR SOKOLOVSKI, MICHELLE MAXWELL, DANIELLE PHILP, TONI SHYTELL, and JULIE HATFIELD**

*/s/ Ellie Kozlowski*
*/s/ Gianna R. Scatchell*

By:_____

Ellie Kozlowski, Esq.
Gianna R. Scatchell

Counsel for Plaintiffs

*Ellie Kozlowski, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 362
E: ellie@dispartilaw.com

*Gianna R. Scatchell, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511
E: gia@dispartilaw.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC ☐ FEPA ☐ | 440-2022-03809 |

| | Illinois Department Of Human Rights | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Adrianna Kondilis | 847-222-0101 | |

| Street Address |
|---|
| 7229 N Olcott Ave |
| CHICAGO, IL 60631 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CITY OF CHICAGO Police Department | 501+ Employees | |

| Street Address |
|---|
| 121 N LA SALLE ST 121 N LASALLE STREET |
| CHICAGO, IL 60602 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Religion | Earliest 10/14/2021 — Latest 06/30/2022 |
| | ☑ Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about October 31, 2016. My current position is Police Officer. During my employment, I requested a religious exemption to Respondents COVID-19 vaccination mandate. I was subjected to different terms and conditions of employment as well as harassment, including but not limited to being tested weekly if not vaccinated and being asked invasive questions about my sincerely held religious beliefs. Specifically, I emailed my exemption request on October 14, 2021; however, I did not receive a response from Respondent. On November 1, 2021, I was stripped and subsequently, placed on a no-pay status for portal non-compliance. I emailed my exemption request again on November 17, November 24, December 6, and December 8, 2021. On February 10, 2022, Respondent requested additional information, requiring a religious or spiritual leaders signature, requiring me to swear off specific medicines by signing a religious exemption follow-up form, and requiring me to respond to a question that I already answered. (An employer cannot question the validity or correctness of religious beliefs.) On February 11, 2022, I provided Respondent with said requested information involuntarily and under duress. I believe this level of inquiry and attestation being demanded by Respondent to be a further violation of my rights under law. Respondents religious exemption follow-up form is a fraudulent retort to religious objections to abortion-derived vaccines. According to Respondent, the follow-up form contains a list of common medicines that have used fetal cells

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Adrianna Kondilis** 07/12/2022 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 440-2022-03809 |

| | |
|---|---|
| **Illinois Department Of Human Rights** | and EEOC |
| *State or local Agency, if any* | |

in their testing, research, and/or development. However, many drugs listed were developed and tested decades before abortion became legal in 1973, and thus, could not have been developed, researched, or tested using aborted fetal cells. I contacted some drug companies and received responses from Pepto-Bismol Consumer Care and Johnson & Johnson Consumer Inc., confirming that Respondent made a false written statement about Pepto Bismol and Tylenol. On March 24, 2022, I emailed one of the designated Human Resources liaisons regarding the status of my exemption. Subsequently, I received my exemption determination notice, which was approved. The determination notice was signed by a Department of Human Resources Representative on February 24, 2022, and by a Department Head/Designee on March 2, 2022; the signature dates show that my employer failed to notify me of the approval until I contacted a Human Resources liaison on March 24, 2022. My employer has neither asked me about nor has provided me any reasonable accommodation to the portal, such as accepting my religious exemption in lieu of entering my personally identifiable information and protected health information into the portal, and instead has engaged in unnecessary delay in their responses, which resulted in me not getting paid and losing my benefits. Similarly situated employees were not required to obtain a religious leaders signature nor sign and submit the religious exemption follow-up form to maintain employment with Respondent. Similarly situated employees have not submitted exemption requests to Respondents COVID-19 vaccination mandate but remain in an active-pay status. Similarly situated employees have not complied to the portal and/or are not in compliance with testing but remain in an active-pay status. I believe I have been discriminated against because of my religion, Eastern Orthodox Christianity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Adrianna Kondilis**  07/12/2022 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Ms. Adrianna Kondilis
7229 N Olcott Avenue
CHICAGO, IL 60631

Charge No: 440-2022-03809
EEOC Representative and email:       Eva Baran
Investigator
Eva.baran@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-03809.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
1/19/2023
Julianne Bowman
District Director

**Cc:** City of Chicago Law Department / Labor Division
David J Seery

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2022-03809 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

| For Official Use Only – Charge Number: |
|---|
| 440-2022-03911 |

EEOC Form 5A (Sept. 1, 2017)

| | |
|---|---|
| **Personal Information** | First Name: MARCIN          MI: _____   Last Name: KAZARNOWICZ<br><br>Address: 4614 N. POTAWATOMIE AVE.                          Apt.: _____<br><br>City: CHICAGO          County: COOK          State: IL   Zip Code: 60656<br><br>Phone: 7735809003   Home ☐   Work ☐   Cell ☒   Email Address: CPD9003@GMAIL.COM |
| **Who do you believe discriminated against you?** | Employer ☒      Union ☐      Employment Agency ☐      Other Organization ☐<br><br>Organization Name: CHICAGO POLICE DEPARTMENT<br><br>Address: 3510 S. MICHIGAN AVE                          Suite: _____<br><br>City: CHICAGO          State: IL   Zip Code: 60653   Phone: 3127466000 |
| **Why you believe you were discriminated against?** | Age ☒      Color ☐      Disability ☐      Genetic Information ☐      National Origin ☒<br><br>Race ☒      Religion ☒      Retaliation ☐      Sex ☐ |
| **What happened to you that you believe was discriminatory?** | **Date of most recent job action you believe was discriminatory: _____**<br>**Describe briefly <u>each job action you believe was discriminatory</u> and when it happened (estimate).**<br>EXPLANATION INCLUDED IN THE ATTACHEMENT |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on Age, Color, Disability, Genetic information, National Origin, Religion, Sex, or based on retaliation for: filing a charge of employment discrimination; helping in someone else's complaint about job discrimination; or complaining to the employer about job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>**Signature:** *Marcin Kazarnowicz*          **Date:** 12OCT2022 |

Group Exhibit 1, p.07

440-2022-03911

I began my employment with Respondent on or about August 29, 2005. My current position is Police Officer. During my employment, I requested a religious exemption to Respondent's COVID-19 vaccination mandate, which was initially denied but later approved. I was subjected to different terms and conditions of employment as well as harassment, including but not limited to being tested weekly if unvaccinated and being asked intrusive questions about my sincerely held religious beliefs. Specifically, I emailed my exemption request on October 14, 2021. On November 1, 2021, I was stripped (removed of Police Powers) for Vaccination Portal non-compliance and issued a CR (complaint) in which I will face termination. Subsequently, on November 2, 2021, I was placed on a no-pay status. On January 5, 2022 Respondent denied my exemption, because I failed to provide the information required (that being a religious leader signature, which is unlawful), my request for a religious exemption then was denied. I emailed my exemption request again and again on 6 separate occasions. On March 1st, 2022 Respondent requested additional information, requiring a religious leader's signature and my signature on a religious exemption follow-up form in which I was forced to swear off certain medications. On March 4th, 2022 I provided Respondent with said requested information involuntarily and under duress. I believe this level of inquiry and attestation being demanded by Respondent to be a further violation of my rights under law. Respondent's religious exemption follow-up form is inaccurate. According to Respondent, the follow-up form contains a list of medications that have used fetal cells in their testing, research, and/or development; however, many medications listed could not have been developed, researched, or tested using aborted fetal cells since they were developed and tested decades before abortion became legal in 1973. On March 25, 2022, I emailed one of the designated Human Resources liaisons regarding the status of my exemption. On April 28, 2022 I received my exemption determination notice, which was initially approved on April 22, 2022 without formal notification. My employer has neither asked me about nor has provided me any reasonable accommodation to the portal. Since the implementation of Respondent's "COVID-19 Vaccination Policy," I have had concerns regarding portal security and privacy. However, I was starved into compliance, and on May 8th, 2022 I entered my personally identifiable information and protected health information into the Vaccination Portal despite security and privacy issues. While I was coerced into submission, other City employees still have not complied with the Vaccination Portal but remained in an active-pay status. Respondent has clearly failed to abide by its announced policy. While I was subjected to all requirements of Respondent's "COVID-19 Vaccination Policy," other City employees were non-compliant yet remained in an active-pay status. Specifically, similarly situated employees have not submitted exemption requests, have not complied with the Vaccination Portal, or were not compliant with testing (prior to Respondent's suspension of testing on September 2, 2022,) but remained in an active-pay status. Respondent's discriminatory actions have caused me overwhelming stress. Not only have I suffered financially, emotionally, and psychologically because of Respondent's discriminatory actions, but also my wife and new born did as well. Having lost my career, pay and health insurance caused familial strife .

440-2022-03911

Respondent even denied my unemployment claim, stating that I committed misconduct, which is False. Although I returned to an active-pay status on May 9, 2022 I remain stripped of my police powers, was involuntary transferred to a different unit and was also re-stripped causing more uncertainty and stress.  I am still awaiting discipline, in which I may face termination. Respondent made this already unfair process disciplinary by issuing me a CR; CR's were only issued to the Chicago Police Department. I believe I have been discriminated against because of my religion (Christianity), age, race, and National origin (Polish Immigrant) in violation of Title VII of the Civil Rights Act of 1964, as amended.

Respectfully

Marcin Kazarnowicz

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Mr. MARCIN KAZARNOWICZ
4614 North Potawatomie Ave
CHICAGO, IL 60656

Charge No: 440-2022-03911
EEOC Representative and email:   Eva Baran
Investigator
Eva.baran@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-03911.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
1/19/2023

Julianne Bowman
District Director

**Cc:** City of Chicago Law Department/Labor Division
David Seery

Please retain this notice for your records.

<span style="color:red">Group Exhibit 1, p.10</span>

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2022-03911 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Group Exhibit 1, p.11

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Group Exhibit 1, p.12

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **440-2022-04543** |

| **Illinois Department Of Human Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>Mrs. Stefanie Mingari | Home Phone<br>224-200-5234 | Year of Birth |
|---|---|---|

Street Address

3754 N Sayre Ave

CHICAGO, IL 60634

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>City of Chicago- Chicago Police Department | No. Employees, Members<br>501+ Employees | Phone No. |
|---|---|---|

Street Address

3510 S. Michigan Ave

CHICAGO, IL 60653

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Religion | Earliest: 10/17/2021     Latest: 08/03/2022<br><br>Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about April 28, 2008. My current position is Police Officer. During my employment, I requested a religious exemption to Respondents Covid-19 vaccination mandate, which was eventually approved after 7 months. Other employees submitted religious exemptions, which were approved much quicker. I believe I was discriminated against because of my religion, Catholic, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>  **Digitally Signed By: Mrs. Stefanie Mingari**<br>**08/12/2022**<br><br><br>                               *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

**To:** Mrs. Stefanie Mingari
3754 N. Sayre Avenue
Chicago, IL 60634

Charge No: 440-2022-04543

EEOC Representative and email:      Chad Beatty
                                    Investigator
                                    Chad.Beatty@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-04543.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
9/8/2022
Julianne Bowman
District Director

**Cc:** City of Chicago- Chicago Police Department

Please retain this notice for your records.

<span style="color:red">Group Exhibit 1, p.15</span>

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2022-04543 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

Group Exhibit 1, p.16